UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH WRIGHT,<br><br>        Plaintiff,<br><br>    v.<br><br>LYFT, INC.,<br><br>        Defendant. | CASE NO. C14-421 MJP<br><br>ORDER GRANTING DEFENDANT'S MOTION TO STAY |

THIS MATTER comes before the Court on Defendant Lyft, Inc.'s ("Lyft") Motion to Dismiss or For Stay ("Motion"). (Dkt. No. 18.) The Court reviewed the Motion, Plaintiff Kenneth Wright's ("Wright") response, (Dkt. No. 20), and the related record. The Court heard oral argument from the parties on December 16, 2014. (Dkt. No. 37.) The Court GRANTS Lyft's Motion to Stay and STAYS this case in its entirety. The Court DEFERS ruling on Lyft's Motion to Dismiss while this case is stayed.

**Background**

Lyft—a transportation company—has created a mobile phone application ("Lyft app.") that facilitates peer-to-peer ridesharing. (Dkt. No. 14 at 3.) Wright pursues federal and state

1 consumer protection claims against Lyft arising out of its alleged use of users' cell phone
2 contacts lists to send text message advertising to nonusers of the Lyft app. (Id. at 2.)

3 　　　　Wright alleges on March 20, 2014 he received an unsolicited text message advertisement
4 transmitted by Lyft using an automatic telephone dialing system ("ATDS"). (Id. at 5-6.) The
5 message told Wright that "Jo Ann C." had sent him a "free Lyft ride worth $25" and instructed
6 Wright to claim the free ride by downloading the Lyft app. (Id. at 5.) Wright contends that
7 while the text message purported to be from "Jo Ann C," one of his contacts, the text message
8 was actually from Lyft. (Id. at 5-6.)

9 　　　　Wright alleges Lyft users are prompted to access an "invite friends" function of the Lyft
10 app. to enable the Lyft app. to access non-user data on their cell phones. (Id. at 4.) Wright
11 further alleges Lyft users can then identify specific cell phone contacts or choose a "Select All"
12 function to transmit information regarding their cell phone contacts to Lyft's computer systems.
13 (Id.) Wright contends Lyft's computer systems then use this information to "sequentially
14 generate advertising text messages to nonusers" of Lyft's app. (Id.) Wright argues Lyft uses an
15 ATDS to send thousands of similar text message advertisements to nonusers of the Lyft app. (Id.
16 at 6.)

17 　　　　Wright seeks to represent a national class under federal law and a Washington State
18 subclass under Washington law comprising anyone who has received "at least one text message
19 containing an advertisement or promotion to download the Lyft app., where the text message was
20 sent through [Lyft's] computer systems." (Id. at 9.) Wright alleges, on his own behalf and on
21 behalf of those similarly situated, violations of: (1) the Federal Telephone Consumer Protection
22 Act ("TCPA"); (2) Washington's Commercial Electronic Mail Act ("CEMA"); and (3)
23 Washington's Consumer Protection Act ("CPA") against Lyft. (Id. at 11-14.)

24

ORDER GRANTING DEFENDANT'S MOTION
TO STAY- 2

Lyft moves to dismiss each of Wright's claims and dismiss Wright's complaint on the grounds that Wright's complaint fails to state a claim upon which relief can be granted. (Dkt. No. 18. at 2-3.) In the alternative, Lyft argues this case should be stayed under the doctrine of primary jurisdiction pending rulings from the Federal Communications Commission ("FCC") on two petitions currently before that agency seeking declaratory relief clarifying what is an ATDS and whether invitational text messages are actionable under the TCPA. (Id.)

## Analysis

### I. Motion to Stay

#### A. Legal Standard Primary Jurisdiction

The doctrine of primary jurisdiction allows a court to stay a proceeding or dismiss a complaint pending the resolution "of an issue within the special competence of an administrative agency." Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008). "[T]he doctrine is a prudential one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." Id. (quotations omitted).

"[N]o fixed formula exists for applying the doctrine of primary jurisdiction." Davel Comm'ns, Inc. v. Qwest Corp., 460 F.3d 1075, 1086 (9th Cir. 2006). Nonetheless, the Ninth Circuit looks to four factors that must be satisfied for the doctrine to apply: (1) the need to resolve an issue that; (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority; (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that; (4) requires expertise or uniformity in administration. Id. at 1086-87.

### B. Glide Talk and TextMe Petitions

Lyft contends the Court should stay this case under the doctrine of primary jurisdiction pending guidance from the FCC on two petitions currently before that agency seeking declaratory relief clarifying what is an ATDS and whether invitational text messages are actionable under the TCPA. (Dkt. No. 18 at 20.)   The Court agrees with Lyft.

On October 28, 2013, Glide Talk, Ltd. petitioned the FCC for declaratory ruling confirming: (a) the TCPA's automatic telephone dialing system restriction applies only to equipment that can, at the time of the call, be used to store or generate sequential or randomized telephone numbers; (b) software and app providers that enable consumers to choose to send invitational text messages do not "make" calls under the TCPA merely by facilitating the ability of their users to send the text messages; and (c) in the event the Commission considers the provider to "make" the call, third-party consent is sufficient for non-telemarketing, user-initiated invitational text messages to wireless numbers. (Dkt. No. 19 at 8.)

On March 18, 2014, TextMe petitioned the FCC for declaratory ruling confirming: (a) the term "capacity" as used in the statutory definition of an ATDS under §227(a)(1) of the TCPA encompasses only equipment that, at the time of use, could in fact perform the functions described in the TCPA without human intervention and without first being technologically altered; and (b) clarify that TextMe does not "make" calls or send text messages pursuant to the TCPA; instead users do. (Dkt. No. 19 at 28.) In the alternative, TextMe seeks declaratory ruling that third party consent obtained through an intermediary satisfies the TCPA's "prior express consent" requirement for non-commercial, informational calls or text messages to wireless numbers. (Id. at 30.)

The factors in the Ninth Circuit's primary jurisdiction test weigh in favor of staying this case pending a ruling from the FCC on the Glide Talk and TextMe petitions.

The first factor weighs in favor staying this case because the Glide Talk and TextMe petitions ask the FCC to resolve to the very issues that this case would require the Court to resolve. The crux of the dispute between the parties is whether Lyft used an ATDS to send the text messages. (See Dkt. No. 18 at 6); (and see Dkt. No. 20 at 8.) The parties dispute whether the Court should interpret "ATDS" narrowly, by strictly applying the statutory definition, or broadly, in light of the FCC's rulings regarding predictive dialers. (see e.g. Dkt. No. 18 at 11.) Lyft contends even if the Court interprets "ATDS" broadly, Wright fails to state a claim under the TCPA because he does not allege that the text messages at issue were sent without human intervention. (Dkt. No. 18 at 11-12.) Wright counters that "it is [Lyft's] automated text message transmissions" and not the manner in which Lyft acquires the cell phone numbers, that give rise to liability under the TCPA. (Dkt. No. 20 at 11.) Both the Glide Talk and TextMe petitions ask the FCC to issue guidance as to whether invitational text messages—like those at issue in this case—are actionable under the TCPA.

Likewise, the second and third factors weigh in favor of staying this case under the doctrine of primary jurisdiction. Congress has vested in the FCC considerable authority to make rules and regulations to implement the TCPA. See Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 953 (9th Cir.2009); see also Charvat v. EchoStar Satellite, LLC, 630 F.3d 459, 466–67 (6th Cir. 2010). Moreover, the FCC "is familiar with the regulations it prescribed and possesses expertise over the statute it implements." Charvat, 630 F.3d at 467 (internal citations omitted).

The fourth factor also weighs in favor of staying this case under the doctrine of primary jurisdiction. Wright opposes the stay arguing "these issues have been decided many times over

by the FCC itself and by numerous courts, including this one." (Dkt. No. 20 at 25.) While Wright is correct that courts have interpreted "ATDS," courts have taken varied approaches to interpreting "ATDS" creating a conflicting body of law. Both Wright and Lyft rely on district court cases that support their respective positions as to how the Court should interpret "ATDS." See e.g. Gragg v. Orange Cab Co., 995 F. Supp. 2d 1189, 1193 (W.D. Wash. 2014) (defendant did not use a predictive dialer where defendant's system was able to dial and transmit the dispatch notification only after the driver has physically pressed accept); but c.f. Sterk v. Path, Inc., No. 13 C 2330, 2014 WL 2443785, at *4 (N.D. Ill. May 30, 2014) ("It is the ultimate calling from the list by the automated equipment that is the violation of the TCPA"). These rulings demonstrate both the need for uniform administration of the TCPA—particularly uniform interpretation of "ATDS"—and the need for guidance from the FCC as to whether invitational text messages are actionable under the TCPA.

While staying the case may result in some delay, the Court does not find that the delay in awaiting a ruling from the FCC on these highly relevant issues outweighs the reasons favoring issuance of the stay. For the foregoing reasons, the Court GRANTS Lyft's Motion to Stay, and STAYS this case in its entirety under the doctrine of primary jurisdiction. The Court DEFERS ruling on Lyft's Motion to Dismiss while this case is stayed. The parties are directed to file a Joint Status Report advising the Court of the status of the proceedings before the FCC in six months or within 10 days of any ruling from the FCC in the interim.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 5th day of January, 2015.

Marsha J. Pechman
United States District Judge