THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH WRIGHT on his own behalf and on behalf of other similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>Lyft, Inc., a Delaware Corporation<br><br>Defendants. | Case No. 2:14-cv-0421<br><br>SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES<br><br>CLASS ACTION<br><br>JURY DEMAND |

## I. INTRODUCTION

1.      With the push of a single button, modern computers can transmit text messages to millions of telephones.  To advertisers, this is a powerful and irresistible method of mass communication.  At very minimal cost, a business can achieve targeted, immediate, and vast promotion of its brand.  At the same time, text messages are uniquely personal.  Each advertisement directs special importance to itself by causing a telephone to buzz or ring, and the advertisement is placed quite literally into the hands of a consumer.

2.      The defendant, Lyft, Inc., markets its products and services through text message advertisements sent in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, the Washington Consumer Electronic Mail Act ("CEMA"), RCW 19.190.010 et seq., and the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, et seq.

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No.  2:14-cv-0421)  - 1

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

3. Plaintiff Kenneth Wright ("Representative Plaintiff"), on his own behalf and on behalf of all other similarly situated persons, brings this Complaint for Injunctive Relief and Damages to obtain from defendant all damages, injunctive relief, attorneys' fees, costs, and other remedies Plaintiffs are entitled to recover under law and equity.

## II. JURISDICTION AND VENUE

4. Federal question jurisdiction exists pursuant to 28 U.S.C. § 1367(a) because Plaintiff asserts legal claims under federal law, the TCPA. Pursuant to 28 U.S.C. § 1367(a), federal supplemental jurisdiction over the CEMA and CPA claims alleged in this complaint.

5. Many of the wrongful acts and omissions referenced in this complaint occurred, were initiated, were furthered, or were given assistance in this district.

6. Defendant conducts business and has harmed consumers in this district.

7. Venue is proper in this Court.

## III. PARTIES

8. Plaintiff Kenneth Wright is an individual domiciled and residing in King County, Washington.

9. Defendant Lyft, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in San Francisco, California. Defendant, acting directly or else through other persons acting on its behalf, conspired to, agreed to, contributed to, assisted with, or otherwise caused all of the wrongful acts and omissions that are the subject of this complaint. To the extent that Defendant acted as alleged in this complaint through another person, such other persons were acting within actual or ostensible authority provided by Defendant, and Defendant ratified each act. Defendant had actual and ultimate control over every act or omission attributed to Defendant in this complaint. But for the conduct of Defendant and others acting on its behalf, none of the wrongful acts and injuries alleged herein would have occurred.

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No. 2:14-cv-0421) - 2

HKM ATTORNEYS
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

## IV. FACTUAL ALLEGATIONS

10.     Defendant is a transportation network company. Its mobile telephone application ("Lyft"), in conjunction with Defendant's computer systems, create a platform for on-demand peer-to-peer ridesharing. Upon information and belief, Lyft has been installed on up to 500,000 mobile telephones across the United States.

11.     In order to request a Lyft car, a rider must download the Lyft application to their iPhone or Android-based mobile telephone, sign-in through Facebook Connect, and enter a valid telephone number and credit card. When a passenger wants a ride, he or she launches the application, which displays a map of the nearest Lyft drivers. The user taps the screen to request a ride, and the application then displays the driver's name, his or her passenger ratings, and photos of the driver and his or her car.

12.     Defendant receives revenue for each ride arranged through its mobile application. All payments are made through the application. The payment requested from each rider includes a $1.50 "Pickup Fee," a $1 "Trust and Safety Fee," and a ride fee that is calculated based on time ($0.35 per minute) and distance ($1.90 per mile). Lift receives the $1 Trust and Safety Fee and 20% of the total fare.

13.     Lyft and other aggressive developers of mobile phone apps engage in a pernicious form of text message marketing known as "spam-viting" or "mobile growth hacking."[1] Spam-

---

[1] *See* Dieter Bohn, *OS Apps and the Address Book: Who Has Your Data, and How They're Getting It, The Verge* (Feb. 14, 2012), (http://www.theverge.com/2012/2/14/2798008/ios-apps-and-the-address-book-what-you-need-to-know); Sarah Perez, *When Growth Hacking Goes Bad*, Techcrunch, http://techcrunch.com/2014/01/03/when-growth-hacking-goes-bad/; Sarah Perez, *Video Texting App Glide is Going "Viral," Now Ranked Just Ahead of Instagram in App Store*, Techcrunch (May 8, 2015) (http://techcrunch.com/2013/07/24/video-texting-app-glide-is-going-viral-now-ranked-justahead-of-instagram-in-app-store/ (referring to the action of an application accessing a user's contact lists and sending pre-written invitational text messages as "spam-vit[ing]"); Sam Biddle & Nitasha Tiku, *Did Path Cheat Its Way to the Top?*, Valleywag (June 12, 2013) (http://valleywag.gawker.com/did-path-cheat-its-way-to-the-top-494127268); *c.f. McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 5264750, at *2 (N.D. Cal. Sept. 9, 2015) (referring to "spam-viting" and "mobile growth hacking").

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No.  2:14-cv-0421)  - 3

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

viting works like this: when a user downloads an app to their mobile device, the app developer seeks to lure or bribe the user into allowing access to their electronic address book. *See id*. The app software and the app developer's hardware are programmed to search for and harvest mobile telephone numbers from the device and to send pre-written, automated text messages to third parties encouraging them to download the app. By design, the app company's software and hardware are programmed to collect data from the user's device and to send unsolicited text messages promoting the company's products and services to third parties. *See id*.

14. In today's ultra-competitive app industry, spam-viting is sometimes unleashed by app developers in waves as a means to quickly boost a user base, particularly before a fundraising campaign or potential acquisition. *See id*. The practice has prompted complaints from consumers across the United States, not only from consumers who have received unsolicited text message spam, but also from app users who had no idea that their contacts would be spammed with commercial text messages. *See id*.

15. This case addresses a spam-viting campaign carried out by Defendant Lyft, Inc. Lyft lured users into unlocking their address books by offering financial rewards to "invite" others to download the Lyft App.

16. Defendant has engineered into its application a function that that collects information from the mobile telephones of its users and transfers it to computer systems under Defendant's possession, custody, or control (herein "Defendant's computer systems"). In one such feature, the Lyft app harvests, from its users' telephones, third-party "contacts" and telephone numbers and information regarding third-party consumers who are not Lyft app users. After harvesting telephone numbers from the mobile telephones of Lyft app users, Defendant's computer systems store the telephone numbers and then automatically transmit programmatically generated text message advertisements to the telephone numbers which are assigned to a cellular telephone service subscriber. Defendant's computer system has the present and proven ability to

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No. 2:14-cv-0421) - 4

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

dial numerous cellular telephone numbers and transmit numerous text messages to large lists of stored cellular telephone number without any human involvement by any person. More simply stated, the Lyft app harvests cellular telephone numbers from its users and transmits these telephone numbers to Defendant's computer systems for the sole purpose of Defendant's computer systems to send automated spam advertising text messages to the cellular telephone numbers of consumers who do not yet use the Lyft app.

17. Defendant's scheme to capture consumer contact information, including cellular telephone numbers, for its spam messages begins by luring Lyft app users into allowing the harvest of third-party consumer information. Defendant entices consumers to allow the Lyft app to harvest cellular telephone numbers and other consumer information from their telephones by promising each user $25 for any third-party who signs up to use the Lyft app in response to advertising text messages sent by Defendant's computer systems.

18. Thus, for example, a Lyft app user who has hundreds of "contacts" stored in their cellular telephone, is enticed with the potential to receive thousands of dollars in ride credits if they allow the Lyft app to harvest the data of all of their contacts so that it can be provided to Defendant's computer systems. Defendant essentially is paying Lyft app users for consumer data pertaining to nonusers of Defendant's products.

19. To allow the Lyft app programmatically to transmit nonuser data to Defendant's computer systems, in exchange for a promise of consideration, consumers are instructed to access an "invite friends" function.  Consumers identify the consumers whose data will be transmitted to Defendant's computer systems, or consumers can "Select All" in order to transmit all contact information in their telephone to Defendant's computer systems.  Defendant's computer systems then harvest the consumer information and Defendant's computer systems

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No.  2:14-cv-0421)  - 5

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

process the data and sequentially generate advertising text message to nonusers of Defendant's products. The text messages are sent by Defendant or its agents; the text messages are not sent through a Lyft app user's cellular telephone or cellular service carrier.

20. Sample screenshots from Lyft's "invite" function are attached as Exhibit A. Lyft users were not informed *how* any "invites" would be sent. Lyft did not tell users whether an "invite" would be sent by U.S. Mail, email, a personal telephone call, or some other method. When accessing the "invite" function, the app showed only a list of names without contact information (*see* Appendix A), and no information regarding residential addresses, email address, or mobile telephone numbers. Lyft did *not* disclose that any person would be called, or that a person would be spammed with a commercial text message to a cellular telephone. Without any such notice to users, Lyft's computers extracted telephone numbers and sent promotional text messages written by Lyft. Lyft users were not informed of what the text messages would say; they had no power to control any of the contents of the messages; and had no information on how they would be sent. The Lyft app told user's only that an "invite" was sent, but not whether it was by mail, email, or text message. The messages were sent through Lyft's computers, not by the users' telephones, so Lyft users did not receive any records of sent text messages on their telephone bill or in a "sent items" folder on their device. To this day, many consumers may have no idea that text messages were sent.

21. As designed, created, implemented, utilized, and deployed by Defendant, the system by which the Lyft app harvests data from its users' telephones, and automatically generates spam text messages to thousands of consumers, operates as an automated telephone dialing system ("ATDS") as that term is defined under the TCPA. Defendant carried out and otherwise substantially assisted with an aggressive marketing campaign which has relied upon

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No. 2:14-cv-0421) - 6

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

1  this ATDS functionality.  Defendant's computer systems generate commercial advertisements on

2  behalf of the Defendant and, in an automated manner, sequentially transmits these

3  advertisements as unsolicited short message system ("SMS") text messages to stored lists of

4  cellular telephone numbers.

5        22.  Lyft is locked in a fierce battle with the industry leader, Uber, to win market share

6  across the United States.  *See* Eric Newcomer, Leslie Picker, *Leaked Lyft Document Reveals a*

7  *Costly Battle with Uber*, Bloomberg (Apr. 30, 2015)

8  (http://www.bloomberg.com/news/articles/2015-04-30/leaked-lyft-document-reveals-a-costly-

9  battle-with-uber).  The Wall Street Journal has called the battle between Uber and Lyft "Tech's

10  Fiercest Rivalry." *See* Douglas MacMillan, *Tech's Fiercest Rivalry: Uber vs. Lyft,* Wall Street

11  Journal (Aug. 11, 2014) (http://www.wsj.com/articles/two-tech-upstarts-plot-each-others-

12  demise-1407800744).  Lyft's spam-viting campaign for new customers may have been

13  advantageous in its battle against its arch-rival, but the tactics are decidedly illegal under both

14  federal and Washington law

15        23.  Defendant's marketing campaign and its ATDS have injured numerous

16  consumers, including plaintiff.  On March 20, 2014, plaintiff received the following unsolicited



SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No.  2:14-cv-0421)  - 7

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

text message from Defendant:

24. This message was sent by Defendant's computer systems, which are ATDSs. It was not sent by "Jo Ann C." The originating telephone number that appeared for this message, (415) 403-2454, is from an area code in San Francisco, California, where Defendant is headquartered. This number is used by Defendant to send its automated spam advertising text messages to consumers.

25. Furthermore, the "Jo Ann C," who is nominally mentioned in Defendant's text message did not ask for or possess plaintiff's consent to allow Defendant to harvest his contact information. Plaintiff had only one short business-related interaction with plaintiff for one hour, on one day more than a year ago. Other than that one brief interaction, plaintiff does not know "Joann C" and does not speak or otherwise interact with her. Plaintiff also does not know how Joann C obtained his telephone number. These facts indicate that "Joann C" was enticed by Defendant's promised consideration to allow the Lyft app to harvest information from her telephone contact records, including on individuals such as plaintiff, whom she barely knows.

26. As part of its marketing scheme, Defendant used a system of electronic transmission devices which have the capability to send tens of thousands of text messages to consumers in an automated manner, and thereby sent the unsolicited text messages substantially similar, if not identical, to the text message identified above to numerous consumers throughout the United States, including Plaintiff. Considering that the Lyft app is used by thousands of consumers every day, Defendant sent far more text messages than humans could manually transmit in an economical manner. The transmission of so many unsolicited text messages burdened or injured the telecommunications infrastructure through which all text messages must pass. As a consequence, cellular service providers incurred avoidable costs which negatively impact the price that consumers like Plaintiffs must pay for cellular telephone services.

27. Consumers have no effective means to avoid the receipt of unsolicited text messages. Prior to the transmission of these text messages, none of the consumers to whom these

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No.  2:14-cv-0421)  - 8

**HKM A**TTORNEYS
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

text messages were directed provided defendant with consent to be sent the text messages. Defendant did not obtain prior consent from the intended recipients before sending these text messages. Nor did Defendant have any reasonable basis upon which to conclude that the intended recipients of these text messages had invited the text messages sent by Defendant's computer systems.

28. Upon information and belief, Defendant's computer systems extract and provide to Defendant non-public and personal information of consumers, including contact information located on the cellular telephones of users. The information extracted includes the personal information for individuals who are not customers and have not authorized Lyft to store their information.

29. The SMS text message sent to Plaintiff was typical of messages sent to numerous other consumers. The links in these messages were designed and intended by Defendant to connect Plaintiff and consumers like him to websites through which Defendants offered financial incentives calculated to cause consumers to download and install Lyft onto their cellular telephones and to use Defendant's services, this generating revenue and profit for Lyft. This promotional scheme is no different than a car dealer offering a free gift if someone comes to text drive a car at their showroom. The "free" gift merely is the bait that masks the hook by which car dealers—like Defendant here—hope to make one or more subsequent sales for profit. The text messages sent by Defendant's computer systems to Plaintiff and consumers like him all promoted, directly or indirectly, the sale of Defendant's services through the Lyft app. Moreover, the text messages deceptively omit that consumers would have to agree to provide other consideration before Defendant would permit them to use the Lyft app and the so-called credit.

30. By the conduct detailed above, Defendant, directly or through its authorized or ostensible agents, engaged in unlawful and otherwise wrongful marketing and advertising practices.  These practices have damaged Representative Plaintiff and persons similarly situated. Defendant used its automated computer systems to cause the transmission of unsolicited

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No.  2:14-cv-0421)  - 9

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

electronic commercial text messages to the cellular telephone numbers assigned to Representative Plaintiff and numerous other consumers.

31. Defendants' conduct above negatively affects the public interest. Defendant caused the unsolicited transmission of numerous SMS text messages to numerous consumers throughout the United States and its territories, including Washington State.

32. Plaintiff did not provide his cellular telephone number to defendant or Defendant's agents for the purpose of receiving marketing messages via text message or any other telephonic communication. Nor did he provide authorization or consent to defendant to send any text message or to store his personal contact information for purposes of marketing. Defendant nevertheless sent Plaintiff the text message identified above. Plaintiff's receipt of this unsolicited text message surprised and annoyed Plaintiff. Like other similarly situated persons who were sent such text messages, Plaintiff was injured as a result of Defendant's transmission of the text message in ways including, but not limited to, the following: (a) Having to pay a cellular service provider to receive the unsolicited text message from Defendant; (b) Invasion of privacy; (c) Aggravation and annoyance from having to retrieve or administer the unsolicited text message on the cellular telephone which received the unsolicited text message; (d) Loss of use of the full capacities and capabilities, *e.g*., electronic storage space, of the cellular telephone which received the unsolicited text message; (e) Loss of energy stored in the battery of the cellular telephone which received the unsolicited text message; and (f) Impairment, burden, or injury to the cellular telephone network upon which Plaintiff and consumers like him rely.

33. By the conduct detailed above, Defendant directly or through authorized or ostensible agents acting within the scope of their authority, or else as subsequently ratified, caused the unlawful transmission of text messages to the cellular telephone numbers of Plaintiff and other similarly situated consumers and otherwise engaged in unlawful marketing and advertising practices.

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No. 2:14-cv-0421) - 10

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

## V. CLASS ACTION ALLEGATIONS

34. Representative Plaintiff brings this class action on behalf of himself and as a representative of the following class of persons entitled to remedies under the Telephone Consumer Protection Act including, but not limited to, damages:

> All persons in the United States of America who were sent, to their cellular telephone numbers, at least one text message containing an advertisement or promotion to download the Lyft app, where the text message was sent through Defendant's computer systems.

35. Representative Plaintiff also brings this class action on behalf of himself and as a representative of the following persons (the "Washington Subclass") who are entitled to remedies under Washington State law including, but not limited to, damages:

> All persons in Washington State who were sent, to their cellular telephone numbers, at least one text message containing an advertisement or promotion to download the Lyft app, where the text message was sent through Defendant's computer systems.

36. Plaintiff's class claims satisfy all of the requirements for class action certification pursuant to the Civil Procedure Rules 23(a) and 23(b)(1), 23(b)(2), and 23(b)(3).

37. Satisfying all requisite numerosity requirements, numerous consumers in the United States are believed to be members of this class. Joinder of so many class members in to a single action is impracticable. In fact, given the number of class members, the only way to deliver substantial justice to all members of the class is by means of a single class action.

38. There are questions of fact and law common to the class, which predominate over any questions affecting only individual members.  The questions of law and fact common to the class arising from defendants' conduct include, without limitation, the following:

- Whether defendant negligently, willfully, and/or knowingly caused violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, when sending unsolicited text messages to Representative Plaintiff and the class?

- Whether defendant used an automated telephone dialing system ("ATDS") to send text messages to Plaintiff?

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No.  2:14-cv-0421)  - 11

HKM ATTORNEYS
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

- Whether defendant's text messages are "commercial electronic text messages" under the Washington Consumer Electronic Mail Act.
- Whether Defendants negligently and/or willfully caused violations, including *per se* violations, of the Washington Consumer Protection Act, RCW 19.86.10, *et seq.*, when sending unsolicited text messages to Representative Plaintiff and the Washington Subclass?
- Whether any Defendants are vicariously or otherwise liable for unsolicited text messages sent to Plaintiff and the class?

39. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of Plaintiffs' claims.

40. Representative Plaintiff's claims are typical of those of the class in that he, just like the other members of the class, was the victim of the unlawful marketing practices referenced in this complaint. The text message which Representative Plaintiff received is typical of the text messages which were transmitted to other members of the class.

41. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendant has acted in a general manner to the damage of the class.  The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests. Moreover, the individual damages of each of the class members are so low that it would be economically impracticable for putative class members to bring their claims individually.

42. A primary factor in Plaintiff's bringing this case is for final injunctive relief which is necessary and appropriate to ensure that Defendant ceases its unlawful and wrongful conduct.  A class action is the most efficient means to ensure that Defendant does not injure the

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No.  2:14-cv-0421)  - 12

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

1  class in the future.

2  43.  Representative Plaintiff is an adequate representative of the class because he is a member of the class and his interests do not conflict with the interests of the members of the class he seeks to represent. The interests of the members of the class will be fairly and adequately protected by Representative Plaintiff.  Representative Plaintiff is represented by attorneys who have extensive, multi-jurisdictional experience representing clients in complex class action litigation.

44.  Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy.  It would be impractical and undesirable for each member of the class who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

45.  If this action is not certified as a class action, then the only way that the court system will not be overburdened by a multiplicity of suits over the subject matter of this complaint is if members of the class cannot or do not pursue an action against Defendant for reasons altogether unrelated to the merits of their claims, *e.g.*, challenges in accessing legal counsel, the mundane realities of surviving in a challenging economy, *et cetera*. Most Plaintiffs can obtain legal representation for their claims only through a class action. The only practical way to ensure that all members of the class are afforded an opportunity to obtain substantial justice with regard to the wrongs and injuries inflicted upon them by defendants is to resolve the subject matter of this complaint through a class action.

## VI. FIRST COUNT
### Violations of the Telephone Consumer Protection Act
### (Representative Plaintiff and the National Class vs. Defendant)

46.  Plaintiff reasserts and re-alleges the allegations set forth in the above paragraphs

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No. 2:14-cv-0421) - 13

**HKM Attorneys**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

as if the same were alleged herein this count.

47. At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the Telephone Consumer Protection Act, 47 U.S.C. § 227.

48. Negligently, recklessly, willfully, and/or intentionally, Defendant directly and/or vicariously engaged in acts, omissions, and/or other actions that violate the Telephone Consumer Protection Act. Defendants directly and/or vicariously created, designed, deployed, and otherwise used an ATDS which harvested consumer telephone numbers and initiated numerous telephone calls to cellular telephone numbers. These telephone calls transmitted unsolicited commercial text messages to the cellular telephones of Representative Plaintiff and the other Plaintiffs as referenced in this complaint.

49. Plaintiff and each member of the proposed class are entitled to recover $500 in damages from the defendants for each violation of the Telephone Consumer Protection Act.

50. Additionally, Plaintiffs are entitled to all damages referenced herein and in accord with proof, attorneys' fees, costs, treble damages, and other remedies allowed by the Telephone Consumer Protection Act or else otherwise permitted by law.

51. The defendants should cease their unlawful conduct now and in the future with (a) a judicial declaration which clearly states the illegality of the conduct and (b) an injunction barring defendants from engaging in such illegal conduct in the future.

### V. SECOND COUNT
**Violations of the Washington Commercial Electronic Mail Act**
*(Representative Plaintiff and the Class vs. Defendant)*

52. Plaintiff reasserts and re-allege the allegations set forth in the above paragraphs.

53. At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190.010 *et seq*.

54. CEMA prohibits "the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service."

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No. 2:14-cv-0421) - 14

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

RCW 19.190.060.

55. In enacting CEMA, the Washington Legislature stated as follows regarding its legislative findings and intent:

> The legislature recognizes that the number of unsolicited commercial text messages sent to cellular telephones and pagers is increasing. This practice is raising serious concerns on the part of cellular telephone and pager subscribers. These unsolicited messages often result in costs to the cellular telephone and pager subscribers in that they pay for use when a message is received through their devices. The limited memory of these devices can be exhausted by unwanted text messages resulting in the inability to receive necessary and expected messages.
>
> The legislature [intends] to limit the practice of sending unsolicited commercial text messages to cellular telephone or pager numbers in Washington.

2003 Wn. Legis. Serv. 137, Sec. 1.

56. Defendant's actions violated CEMA. Plaintiffs are entitled to damages of $500 per illegal text message.

## VI. THIRD COUNT
### Violations of the Washington Consumer Protection Act
*(Representative Plaintiff and the Class vs. Defendant)*

57. Plaintiff reasserts and re-alleges the allegations set forth in the above paragraphs.

58. At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the Washington Consumer Protection Act and related Washington statutes.

59. Defendant's practice of transmitting and/or assisting in the transmission of electronic commercial text messages to Plaintiffs' cellular phones is a violation of RCW 19.190.060. This violation, per statute, is a *per se* violation of Washington's Consumer Protection Act, RCW 19.86.010, *et seq.*

60. Defendant's practice of transmitting and/or assisting in the transmission of electronic commercial text messages to Plaintiffs' cellular phones is conduct that vitally affects

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No. 2:14-cv-0421) - 15

HKM ATTORNEYS
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

the public interest and is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the Consumer Protection Act, RCW 19.86.010, *et seq.*

61.     Defendant conducted these practices in the scope of its trade and in furtherance of the development and preservation of such business services.

62.     Defendant's violations of the Consumer Protection Act are intentional, willful, and subject to treble damages under RCW 19.86.010, *et seq*.

63.     Plaintiffs have suffered injuries to their persons and property as a direct result of Defendant's numerous violations of RCW 19.86.010, *et seq*.

64.     Defendant's practices are emblematic of organizational policies and agreements which have caused and, if unabated, will continue to cause incidents, occurrences, and conduct which violate RCW 19.86.010, *et seq.*, and RCW 19.190.010, *et seq.*

65.     Plaintiffs are entitled to recover damages for each of the violations of RCW 19.86.010, *et seq.*, in amounts set forth by law.

66.     Plaintiffs are further entitled to recover damages for each of the violations under RCW 19.190.010, *et seq.*, in amounts set forth by law and otherwise in accord with proof to be provided at trial.

67.     Plaintiff*s* will continue to be damaged if Defendant is not compelled to cease and desist unlawful conduct and unfair, deceptive, and unlawful practices. Plaintiffs are further entitled to all attorneys' fees, costs, and treble damages as allowed by RCW 19.86.010, *et seq.*, and as otherwise permitted by law

## VII. PRAYER FOR RELIEF

WHEREFORE, Representative Plaintiff, and all others similarly situated, demand judgment against defendants and pray this Court do the following:

A.      Issue a declaration which makes clear the illegality of defendant's wrongful conduct.

B.      Grant a permanent injunction enjoining defendant, its officers, successors, agents,

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No.  2:14-cv-0421)  - 16

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

assigns, and all persons in active concert or participation with Defendant, from engaging in the unlawful conduct, including without limitation using an automated telephone dialing system to send unsolicited text messages.

    C.    Grant a permanent injunction enjoining defendant, its officers, successors, agents, assigns, and all persons in active concert or participation with Defendant, from sending any more telemarketing text messages to residents of Washington.

    D.    Declare that the subject text messages are commercial electronic text messages.

    E.    Declare that Defendant's computer systems are an ATDS under the TCPA.

    F.    Declare that Defendant did not first obtain any consent before sending the subject text messages to Plaintiffs.

    G.    Declare that Defendant's actions as alleged in this complaint violate the TCPA, CEMA, and CPA.

    H.    Order defendant to make Representative Plaintiff and the other class members whole by providing compensation for past and future pecuniary losses resulting from the unlawful practices described above in amounts to be determined at trial, but in no event less than $500.00 for each violation of 47 U.S.C. § 227. *et seq.,* and $500.00 for each violation of RCW 19.86.010, *et seq.* and/or RCW 19.190.010, *et seq.*

    I.    Order defendant to make Representative Plaintiff and the other class members whole by providing appropriate prejudgment interest, in an amount to be determined at trial, and other affirmative relief necessary to eradicate the effects of the unlawful practices.

    J.    Order defendant to pay Representative Plaintiff and the other class members punitive and/or treble damages to the fullest extent allowed by law, including but not limited to all punitive and/or treble damages for a knowing or willful violation of the Telephone Consumer Protection Act.

    K.    Award Representative Plaintiff and the other class members the costs of this action, including attorneys' fees, as authorized by law and/or as sounds in tort, contract, or

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No. 2:14-cv-0421) - 17

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

1  equity.

2    L. Grant any additional or further relief as provided by law or equity which this

3  Court finds appropriate, equitable, or just.

4    RESPECTFULLY SUBMITTED:  [DATE].

**HKM ATTORNEYS**[2]
600 Stewart Street, Suite 901
Seattle, WA  98101
Tel: (206) 838-2504
Fax: (206) 260-3055

*/s/ Donald W. Heyrich*
Donald W. Heyrich, WSBA #23091
 dheyrich@hkm.com

Peter Stutheit, WSBA #32090
**STUTHEIT KALIN LLC**
308 SW First Avenue, Suite 325
Portland, OR 97204 Tel: (503) 493-7488
Fax: (503) 715-5670
peter@stutheitkalin.com

Attorneys for Plaintiff

---

[2] HKM Attorneys is a division of HKM Employment Attorneys LLP.

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No.  2:14-cv-0421)  - 18

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

**CERTIFICATE OF SERVICE**

On April 4,, 2016, I caused the foregoing document to be filed with the Clerk of the United States District Court, Western District of Washington, using the ECF system, which will cause a copy to be served on all counsel of record.

*/s/ Donald W. Heyrich*
Donald W. Heyrich, WSBA #23091

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, WA 98101
Telephone: (206) 838-2504
Facsimile: (206) 260-3055
Email: dheyrich@hkm.com

SECOND AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES (Case No. 2:14-cv-0421) - 19

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504