1

2     THE HONORABLE BARBARA J. ROTHSTEIN

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
8                            AT SEATTLE

9

10    KENNETH WRIGHT, on his own behalf and
      on behalf of other similarly situated persons,        Case No. 2:14-cv-00421-BJR
11
                                          Plaintiff,
12                                                          PLAINTIFF'S UNOPPOSED MOTION
                                                           FOR PRELIMINARY APPROVAL OF
13         v.                                              CLASS ACTION SETTLEMENT

14    LYFT, INC., a Delaware corporation,
                                                           NOTE ON MOTION CALENDAR:
15         Defendant.                                      November 6, 2018

16

17

18

19

20

21

22

23

24

25

26

27

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS          **HKM ATTORNEYS**
ACTION SETTLEMENT (Case No. 2:14-cv-00421-BJR)             600 Stewart Street, Suite 901
                                                           Seattle, Washington  98101
                                                                (206) 838-2504

# Table of Contents

I. INTRODUCTION ...................................................................................................... 1

II. PROCEDURAL AND FACTUAL BACKGROUND ............................................... 1

  A.   Plaintiff's Allegations ...................................................................................... 1

  B.   The Settlement was the Result of Over Four Years of Vigorous Litigation, Extensive Motion Practice, Significant Court Rulings, and Arms-Length Negotiations ................ 2

  C.   The Parties Reached Settlement After Three Separate Mediations with Two Different Mediators and Months of Follow Up Negotiations ........................................ 3

  D.   The Terms of the Settlement Agreement ........................................................ 4

    1.  Class Definition .......................................................................................... 4

    2.  Settlement Benefits to Class Members ....................................................... 4

    3.  Claim Form ................................................................................................. 6

    4.  Class Representative Incentive Award and Class Counsel Attorneys' Fees ............... 6

    5.  Notice .......................................................................................................... 6

    6.  Opt-Out Rights ........................................................................................... 7

    7.  Deadlines Contemplated By Settlement Agreement ................................... 7

III. AUTHORITY AND ARGUMENT ......................................................................... 8

  A.   The Proposed Settlement Should be Preliminarily Approved ........................ 8

    1.  The Proposed Settlement Is Fair Because It Was the Product of Arm's-Length Non-Collusive Negotiations ................ 9

    2.  The Proposed Settlement is Reasonable and Adequate ............................. 11

    3.  The Class Notice is Adequate ................................................................... 16

  B.   Provisional Certification of the Settlement Class Is Appropriate. ................ 17

    1.  The Rule 23(a) Factors Are Satisfied. ...................................................... 17

    2.  Commonality. ............................................................................................ 18

    3.  Typicality. ................................................................................................. 18

    4.  Adequacy. ................................................................................................. 18

    5.  The Rule 23(b)(3) Criteria Are Met. ........................................................ 19

  C.   Scheduling a Final Approval Hearing Is Appropriate................................... 19

IV. CONCLUSION....................................................................................................... 20

# I. INTRODUCTION

Plaintiff Kenneth Wright, individually and on behalf of a proposed Settlement Class, (hereinafter "Plaintiff"), hereby moves the Court for an order granting this Unopposed Motion for Preliminary Approval of Class Action Settlement.  This motion is not opposed by Defendant Lyft, Inc. ("Lyft" or "Defendant"). A full and executed copy of the parties' Stipulation and Settlement Agreement is submitted herewith as Exhibit 1 to the Declaration of Donald W. Heyrich in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ( *"Heyrich Decl."*).

Plaintiff makes this motion on the grounds that the settlement is fair, adequate, and reasonable and otherwise satisfies the requirements for preliminary approval. Plaintiff bases this motion upon the accompanying Declaration of Donald W. Heyrich, the Settlement Agreement and exhibits, all pleadings and records on file herein, and such other documentary evidence or arguments as may be presented to the Court on the motion.

The parties respectfully request that the Court approve the form, content, and method of delivering notice to the Class as set out in the Settlement Agreement; and schedule a final approval hearing in accordance with the deadlines proposed in the Settlement Agreement.  A proposed Order, in the form approved by the Parties, is included as Exhibit A to the Settlement Agreement and is submitted herewith for the Court's consideration.

# II. PROCEDURAL AND FACTUAL BACKGROUND

## A.  Plaintiff's Allegations

Plaintiff Kenneth Wright filed this class action on March 24, 2014. *See* Dkt. No. 1. On June 6, 2014, Plaintiff filed Plaintiff's First Amended Complaint for Injunctive Relief and Damages (the "First Amended Complaint").  On April 4, 2016, Plaintiff filed Plaintiff's Second Amended Complaint for Injunctive Relief and Damages (the "SAC").  The SAC alleges that Lyft violated the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"),

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

1   the Washington Commercial Electronic Mail Act, RCW 19.190.010 et seq. ("CEMA"), and the

2   Washington Consumer Protection Act, RCW 19.86.010 et seq. ("CPA"), by sending unsolicited

3   commercial text messages to Plaintiff and members of the putative class on telephone numbers

4   assigned to wireless subscribers.

**B. The Settlement was the Result of Over Four Years of Vigorous Litigation, Extensive Motion Practice, Significant Court Rulings, and Arms-Length Negotiations**

From the beginning of the litigation, Defendant has contested almost every aspect of

Plaintiff's claims.  Defendant challenged whether Plaintiff could establish the use of an

automatic telephone dialing system ("ATDS") under the TCPA; whether Defendant was the

sender of the text messages under the TCPA and Washington statutes; whether the text

messages in question qualified as a commercial electronic text message under Washington law;

whether CEMA conferred a private cause of action for Plaintiff to pursue damages; and whether

damages were available under the CPA for the acts alleged in the SAC.  *See e.g.,* Dkt. Nos. 8

(Defendant's Motion to Dismiss or for Stay), 18 (Defendant's Renewed Motion to Dismiss or

for Stay), and 54 (Defendant's Renewed Motion to Dismiss).

On January 5, 2016, the Court stayed the case pending rulings by the Federal

Communications Commission on petitions addressing relevant issues under the TCPA.  *See*

Dkt. No. 40 (Order Granting Defendant's Motion to Stay).  On October 27, 2015, the Court

lifted the stay (Dkt. No. 52) and, on April 15, 2016, the Court entered its Order on Motion to

Dismiss.  Dkt. No 63.  The Court dismissed Plaintiff's claim under the TCPA and denied

Defendant's motion on Plaintiff's claims under CEMA and the CPA.  *Id.*

Thereafter, on February 17, 2017, the Court certified two questions to the Washington

Supreme Court:

> 1. Does the recipient of a text message that violates the Consumer Electronic Mail Act, Ch. 19.190 RCW ("CEMA"), have a private right of action for damages (as opposed to injunctive relief) directly under that statute?

2. Does the liquidated damages provision of CEMA, RCW 19.190.040(1), establish the causation and/or injury elements of a claim under the Washington Consumer Protection Act, Ch. 19.86 RCW ("CPA"), as a matter of law or must the recipient of a text message that violates CEMA first prove injury in fact before he or she can recover the liquidated damage amount?

Dkt. No. 73.

On December 14, 2017, the Washington Supreme Court answered the certified questions and held that (1) the recipient of a text message sent in violation of CEMA does not have a private right of action for damages directly under CEMA; but (2) the liquidated damages provision of CEMA, RCW 19.190.040(1), establishes the causation and injury elements of a claim under the CPA as a matter of law. *See* Dkt. No. 76.

To this day, Defendant continues to contest all of Plaintiff's causes of action and Plaintiff's ability to obtain class certification in the litigation. It is clear that, absent settlement, the litigation path ahead is guaranteed to be long, costly, and with significant risk to both parties.

## C. The Parties Reached Settlement After Three Separate Mediations with Two Different Mediators and Months of Follow Up Negotiations

Settlement negotiations in this matter were as hard fought as the litigation. With risks on significant legal issues, the parties first agreed to mediate this matter on September 17, 2014. The parties engaged the Honorable Terrence Lukens (Ret.), an experienced mediator and former Judge of the King County Superior Court, who has developed a respected reputation as a mediator of TCPA and CEMA cases. *Heyrich Decl.* ¶ 3. The case did not resolve at that first mediation, but the parties continued to negotiate. *See* Dkt. Nos. 25 (Joint Report Regarding Mediation Status), 30 (Joint Report Regarding Mediation Status).

One year later, on October 6, 2015, after further legal developments in the case, the parties convened a second mediation with Judge Lukens. The parties were unable to resolve the case in that second mediation. *See* Dkt. No. 51 (Joint Status Report).

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT (Case No. 2:14-cv-00421-BJR) - 3

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

After the Washington Supreme Court issued its ruling on the certified questions, and due to the significance of the case and the difficulty in finding a resolution, the parties agreed to the expense and time necessary to conduct a full-day mediation out-of-state.  On October 30, 2017, the parties attended a full-day mediation in Corona del Mar, California, with Gary A. Feess, a retired United States District Court Judge for the Central District of California.  The parties were unable to resolve the case at the mediation with Judge Feess but continued negotiations by telephone with Judge Feess and later directly between counsel.  *Heyrich Decl.* ¶ 5.

The parties continued settlement discussions for several months and worked on putting together the settlement agreement presented to the Court in this motion.  *Heyrich Decl.* ¶ 6. Plaintiff respectfully submits that the agreement balances the risks faced by both parties in this case.

**D.  The Terms of the Settlement Agreement**

    1.   <u>Class Definition</u>

For the purposes of settlement, the parties submit a class definition that encompasses both the CEMA/WCPA and TCPA claims of Washington residents, to not only ensure full and complete relief for the class but a settlement of all disputed claims for Defendant.  Therefore, the class receiving the benefits and scope of this settlement is proposed as follows:

> All Washington residents who, between June 1, 2012, and the
> date of preliminary approval, received on their cellular
> telephones one or more invitational or referral text messages
> through Lyft's 'Invite A Friend' program.

The Class is believed to include at least 330,000 individuals. *Heyrich Decl.* ¶ 7.

    2.   <u>Settlement Benefits to Class Members</u>

Under the terms of the Settlement Agreement, Lyft has agreed to establish a non-reversionary settlement fund in the amount of $3,995,000.  Under the proposed settlement, the fund will be used to pay the expenses related to settlement administration, an incentive award to named plaintiff Kenneth Wright, payment of plaintiff's attorneys' fees, and reimbursement of litigation expenses.  All remaining funds will then be distributed to members of the class who

make a claim for a share of the settlement fund.  No amount of the settlement fund will be returned to Defendant.

Under the terms of the agreement, distribution of the settlement fund will be carried out according to a formula and certain factual circumstances that differentiate class members.  The proposed distribution formula takes into account the fact that Lyft changed the way in which the "invite-a-friend" program worked on February 9, 2015.  Lyft alleges that it has strong defenses for any claim based on a text message sent after that date.  The proposed distribution also takes into account the fact that some members of the proposed class became Lyft users.  These class members agreed to Lyft's written Terms of Service when they signed up for service. As explained in further detail below, Lyft contends that the written Terms of Service provide strong defenses for claims by any proposed class member who agreed to those terms.  Thus, in light of the different strengths and weaknesses of the legal claims that apply to each of the four groups, the settlement provides for more or less "shares" of the settlement fund for class members who fall into the four groups, as follows:

| Group A | Received a message before February 9, 2015 and did not accept Lyft's Terms of Service | A class member in this group making a claim will receive **10** shares. |
|---|---|---|
| Group B | Received a message before February 9, 2015 and accepted Lyft's Terms of Service | A class member in this group making a claim will receive **5** shares. |
| Group C | Received a message on or after February 9, 2015 and did not accept Lyft's Terms of Service | A class member in this group making a claim will receive **2** shares. |

| **Group D** | Received a message on or after February 9, 2015 and accepted Lyft's Terms of Service | A class member in this group making a claim will receive **1** share. |
|---|---|---|

The amount of each share will turn on how many class members submit a claim for payment.  However, assuming that 25% of class members in each group submit claims, Plaintiff's counsel estimate that the payments to the class would range from $13 (for Group D) to $132 (for Group A).  *Heyrich Decl.* ¶ 7.

3.  Claim Form

To receive a settlement payment, Class members will be required to submit a short claim form certifying that they are members of the Class and had received a text message as part of Lyft's Invite-A-Friend program. These Claim Forms will be cross-checked against Lyft's records. Claim Forms will be considered timely if they are submitted electronically or postmarked within 60 days from the date the claims administrator effectuated the mailing.

4.  Class Representative Incentive Award and Class Counsel Attorneys' Fees

The Settlement Agreement provides that, for purposes of settlement, Defendant will not oppose an application submitted by Plaintiff or Settlement Class Counsel for attorney's fees of up to 25% of the settlement fund and reimbursement of counsel's out-of-pocket litigation costs and for an individual incentive award for Mr. Wright of up to $5,000.

5.  Notice

Written notice of the proposed settlement will be provided to the Settlement Class by email, where an email can be located; or, if an email address is not available, by first-class mail, where a mailing address can be located, sent no later than 60 days from the Court's entry of an order granting preliminary approval of the settlement.  Lyft's records may include the email addresses and/or mailing addresses for some class members, and the Settlement Administrator will make use of tools designed to look up contact information for the remaining class members based on those members' mobile phone numbers.  The Class Notice will inform Class Members

about the basis of the claims; identify who is included in the class; identify who is eligible to receive a payment and the potential for recovery; describe how Class Members may exclude themselves from the settlement; notify Class Members of their right to object to the Settlement; and include the contact information for the Settlement Administrator and the settlement website address, which will contain additional information including a long-form notice and claim form. In addition, Class Notice will be published in the *Seattle Times* and Spokane *Spokesman Review* with similar information as the mailed notice. Class Members will have 60 days from the date of the issuance of notice to submit their claim. The proposed Class Notice has been attached as exhibits to the Settlement Agreement.

      6.    <u>Opt-Out Rights</u>

Members of the Class will be able to opt-out of the class by sending a written request for exclusion to the Settlement Administrator by first-class mail. So-called "class" or "mass" opt-outs will not be permitted. All individual opt-out notices must be postmarked within 60 days after notice of the settlement has been issued. Also, within this 60-day period, any Class Member who objects to the Settlement Agreement must file with the Court and serve upon the Parties a written notice along with supporting papers setting forth the objector's grounds for objection.

      7.    <u>Deadlines Contemplated By Settlement Agreement</u>

The following table sets out the deadlines:

| EVENT | SCHEDULED DATE |
|---|---|
| Deadline for mailing Class Notice | 60 days after entry of Preliminary Approval Order (the "Notice Period") |
| Fee and Cost Application due | 30 days after the issuance of Class Notice |
| Deadline to submit Claims, opt-out, or object | 60 days after the issuance of Class Notice |

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT (Case No. 2:14-cv-00421-BJR) - 7

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

| | |
|---|---|
| Parties file their briefs in support of Final Approval, including responses to objections (if any) | No later than 7 days prior to the Final Approval Hearing. |
| Final Approval Hearing | To allow sufficient time to accomplish Class Notice, to allow the Objection/Opt-Out deadline to close, and to respond to objections (if any), the Final Approval Hearing should be set at least 150 days after entry of the Preliminary Approval Order |
| Payment of Incentive Award | Within 30 days after the Effective Date as defined in the Parties' Agreement and pursuant to Section 5.02 of the Agreement |
| Payment of Fees and Costs | Within 30 days of the Effective Date as defined in the Parties' Agreement pursuant to Section 5.01 of the agreement. |
| Payment to Settlement Class Members | No later than 45 days after the Effective Date, as explained further Section 8.09 the Settlement Agreement. |

Under this proposed schedule, Class members will have at least 60 days to decide whether to opt-out or file objections to the terms of the Settlement Agreement, and at least 30 days to decide whether or not to object to Class Counsel's Fee and Cost Application.

### III. AUTHORITY AND ARGUMENT

A.   **The Proposed Settlement Should be Preliminarily Approved**

In the Ninth Circuit, settlements of complex class action lawsuits are strongly favored. *Class Plaintiff v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Speed Shore Corp., v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of second public policy.  Settlement agreements conserve judicial time and limit expensive litigation.").  It is within the broad discretion of the trial court to approve a class action settlement.  *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The approval of a class action settlement takes place in two stages: preliminary approval and final approval. *West v. Circle K Stores, Inc*., No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006). At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of the notice of the certification, proposed settlement, and date of the final fairness hearing." *See In Re M.L. Stern Overtime Litigation*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864 at *3 (S.D. Cal. April 13, 2009) (quoting Manual on Complex Litigation Fourth § 21.632 (2004)). During the preliminary process, the Court simply determines "whether there is any reason to notify the class members of the proposed class settlement and to proceed with the fairness hearing." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). The Court's review is limited to the extent necessary to reach a reasoned judgment that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. If there are no obvious deficiencies, and the settlement falls into the range of possible approval, it should be preliminarily approved. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1057 (9th Cir. 2008)*; Alaniz v. California Processing, Inc*., 73 F.R.D. 269, 273 (C.D. Cal. 1976). As set forth below, the proposed Settlement satisfies the standard for preliminary approval.

1.   The Proposed Settlement Is Fair Because It Was the Product of Arm's-Length Non-Collusive Negotiations

The requirement that the proposed Settlement be conducted by arm's-length, and non-collusive negotiations protects the proposed Class Members. Generally, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval." Newberg § 11.41; *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("considerable weight" given to settlement reached after hard-fought negotiations).

The proposed Settlement in this case is presumptively fair because it was reached through years of arms-length, contentious negotiations and there was no collusion between the parties.  In fact, it was reached following three separate full-day mediations with two different mediators and multiple follow up negotiations.

The fact that experienced mediators were involved in the settlement strongly evidences the non-collusiveness of the settlement.  *See Thieriot v. Celtic Ins. Co.*, No. C-10-04462-LB, 2011 WL 1522385, *5 (N.D. Cal. Apr. 21,2011) ("[T]he settlement is the product of serious, non-collusive, arms' length negotiations by experienced counsel with the assistance of an experienced mediator at JAMS . . . In sum, the court finds that viewed as a whole, the settlement is sufficiently "fair, adequate, and reasonable" such  that approval of the settlement is warranted."); *see also Adams v. Inter-Con Security Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007); *see also In re Austrian and German Holocaust Litig.*, 80 F. Supp. 2d 165, 173-74 (S.D.N.Y. 2000).

Moreover, the settlement was reached under the backdrop of four years of hard-fought litigation.  This included multiple motions and certified questions to the Washington Supreme Court.  After contentious motions to dismiss and extensive briefing on the legal issues in this Court and the Washington Supreme Court, the negotiations were well-tempered by a fully-developed legal record.  Arm's-length negotiations conducted by competent, informed counsel are prima-facie evidence of a settlement that is fair and reasonable. *See Hughes v. Microsoft Corp.*, No. C98-1646C, C93-0178C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001) (noting that a "presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel"); *see also Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 542–43 (W.D. Wash. 2009) (approving settlement "reached after good faith, arms-length negotiations"); *see also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 567 (W.D. Wash. 2004) (approving settlement "entered into in good

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT (Case No. 2:14-cv-00421-BJR) - 10

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

faith, following arms-length and non-collusive negotiations"). Accordingly, the Settlement Agreement is entitled to a strong presumption of fairness.

That presumption is more than justified: The parties reached this settlement through arm's-length bargaining, multiple mediation sessions, the assistance of Judges Feess and Lukens, dozens of calls between counsel and months of follow up work, motions to dismiss, and certified questions answered by the Washington Supreme Court.

2.     The Proposed Settlement is Reasonable and Adequate

In making a determination of whether the Settlement is adequate and reasonable, the Court must ultimately balance the following factors: "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the stage of the proceedings; and the experience and views of counsel." *Hanlon*, 150 F.3d at 1026.

Here the settlement ensures timely relief and recovery for the claims alleged by Plaintiff and that could be alleged by members of the class. It therefore satisfies the reasonableness and adequacy standards.

a.     **Assessment of the Risks**

In agreeing to resolve this case, Plaintiff recognizes that, if litigation were to proceed, the proposed class would face meaningful impediments to recovery. Those obstacles further justify settlement here. In particular, Plaintiff recognizes that Lyft has substantial arguments that could well preclude class certification as to the claims under the Washington CPA. In addition, Lyft plans to advance arguments contesting the constitutionality under the First Amendment of the TCPA and CEMA. Any holding that the TCPA or CEMA violates the First Amendment would have serious implications for Plaintiff's claims on behalf of the class.

In addition, if the case does not settle, Lyft would vigorously contest class certification. For example, Lyft would contend that Plaintiff bears the burden of proving that any person in the proposed class was a Washington resident at the time he or she received a text message from

Lyft. The CPA claim here rests on CEMA, and Lyft argues that only Washington residents may recover under CEMA.  See RCW 19.190.060(1) ("No person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident . . . ."). For most of the proposed class, Lyft has only records of the text message recipients' mobile phone numbers at the time the message was sent.  Unless the recipient signed up to use Lyft's platform, Lyft is unlikely to have any more identifying information about the recipient. Although mobile phone numbers with a particular area code can be helpful in assessing the residence of the subscriber, they are not necessarily proxies for residence because mobile phone users often maintain the same phone number indefinitely.  Although Plaintiff believes he could have overcome Lyft's contentions, Lyft would have contended that class members were required to offer individualized proof of their residency at the time they received the text message before they could recover in this class action.  *Cf. In re Asacol Antitrust Litig*., --- F.3d ----, 2018 WL 4958856 at * 2 (1st Cir. Oct. 15, 2018) (reversing class certification in litigated case where "district court presumed" based on expert evidence "that approximately ten percent of class members had not been injured by [defendant's] allegedly anticompetitive conduct").

Lyft also contends that putative class members must show that they did not consent to receive text messages inviting them to Lyft, based on language in CEMA stating that commercial electronic text messages are lawful when the recipient of the text messages "has clearly and affirmatively consented in advance to receive these text messages."  RCW 19.190.070(1)(b).  Lyft would have argued that many of the text messages sent through its "Invite A Friend" program were covered by this exemption and that this created individual questions that could preclude class certification.

Finally, many of the putative class members either were already Lyft subscribers or signed up for Lyft after receiving their invitational text messages.  Lyft contends that these class members would be bound by Lyft's Terms of Service, which have long included an arbitration

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT (Case No. 2:14-cv-00421-BJR) - 12

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

1  provision.  Lyft would have sought to enforce that arbitration provision, and, if it were

2  successful, potential class members who agreed to arbitrate may be precluded from participation

3  in class action litigation before this Court.  Lyft previously has succeeded in enforcing its

4  arbitration provision.  *E.g., Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 966-67 (N.D. Cal. 2015).

5        Taking these arguments together, Lyft would have argued that a class-wide trial is

6  unmanageable—precluding certification of a litigated class—because it would have been

7  entitled to raise all of these issues at trial, if not before.  Specifically, Lyft would argue that, if a

8  class were certified, due process would entitle Lyft to conduct individualized mini-trials with

9  respect to each class member to determine (1) whether he or she resided in Washington at the

10  time he or she received a text message from Lyft, (2) whether he or she consented to receive the

11  message at issue, and (3) whether he or she agreed to arbitrate disputes with Lyft.  *See Lindsey*

12  *v. Normet*, 405 U.S. 56, 66 (1972) ("Due process requires that there be an opportunity to present

13  every available defense.") (internal quotation marks omitted); *Wal-Mart Stores, Inc. v. Dukes*,

14  564 U.S. 338, 367 (2011) ("Because the Rules Enabling Act forbids interpreting Rule 23 to

15  'abridge, enlarge or modify any substantive right,' a class cannot be certified on the premise

16  that Wal–Mart will not be entitled to litigate its statutory defenses to individual claims.")

17  (quoting 28 U.S.C. § 2072(b)).   By contrast, it is established that a court need not consider

18  manageability in assessing whether to certify a class for settlement purposes only.  That

19  difference is yet another reason why Wright believes that a negotiated resolution of this case on

20  a class-wide basis is far preferable to the uncertainty of litigation.

21        In addition, if the case were to be litigated further, Lyft also would have pursued a First

22  Amendment challenge to the application of CEMA here, pointing to the fact that the Ninth

23  Circuit recently granted permission for a business to file an appeal to raise a First Amendment

24  challenge to the constitutionality of the TCPA.  *Gallion v. Charter Commc'ns, Inc.*, No. 18-

25  55667 (9th Cir.).  The defendant in *Gallion* is arguing that because the TCPA contains a number

26  of exemptions, it amounts to a content-based restriction of speech subject to strict scrutiny

27

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT (Case No. 2:14-cv-00421-BJR) - 13

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

1    under the First Amendment. *See Meza v. Sirius XM Radio, Inc*., 2018 WL 4599718, at *4-*5

2    (S.D. Cal. Sept. 25, 2018) (characterizing issues in *Gallion* and granting a stay of litigation).

3    Lyft would contend that similar arguments apply to CEMA.

4         In short, while Plaintiff and his counsel disagree with Lyft's arguments and believe class

5    certification would be appropriate, they are aware of the possibility that a court might accept

6    Lyft's arguments and deny any motion for class certification or deny liability based on Lyft's

7    other arguments regarding CEMA and the CPA.  Moreover, even if Wright were to prevail on a

8    classwide basis, any recovery could be delayed for years by an appeal.  In contrast, the

9    Settlement Agreement provides substantial monetary relief to Settlement Class Members

10   without further delay and is preferable to the risks that each party would face if the case were

11   litigated.

12        **b.      The Amount Offered in Settlement and Experience and Views of**
                **Counsel**

13

14        The compensation provided in this resolution strikes a reasonable balance between the

15   legal issues presented in this case and the statutory damages authorized by the TCPA and

16   CEMA and is well within the range of settlements approved in similar cases.  *See, e.g.*,

17   *Manouchehri v. Styles for Less, Inc.*, Case No. 14-cv-2521 NLS, 2016 WL 3387473, at *2, 5

18   (S.D. Cal. June 20, 2016) (approving TCPA settlement of $10.00 cash or $15.00 voucher for

19   class members); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7

20   (E.D. Cal. Oct. 6, 2015) ($40.00 cash for class members); *Kolinek v. Walgreen Co.*, No. 13-

21   4806 (N.D. Ill. 2015) (providing approximately $30 to each claiming class member); *In re*

22   *Capital One TCPA Litig*., 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (providing $34.60 per

23   claiming class member); *Wojcik v. Buffalo Bills, Inc.*, No. 12-2414, Dkt. 73 (M.D. Fla. Apr. 17,

24   2014) (providing for $57, $65, or $75 gift cards redeemable only at defendant's stores); *In re*

25   *Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-2261, Dkt. 97 (S.D. Cal. 2013) (providing for a

26   $20 voucher to each claiming class member, which could be redeemed for $15 cash after nine

27   months); *Kazemi v. Payless Shoesource, Inc.*, No. 09-05142, Dkt. 94 (N.D. Cal. 2012)

(providing for a $25 voucher to each claiming class member); *Garret, et al. v. Sharps Compliance, Inc.*, Case No. 1:10-cv- 04030, ECF No. 65 (N.D. Ill. Feb. 23, 2012) (providing class members between $27.42 and $28.51 cash); *Cubbage v. Talbots, Inc.*, No. 09-cv- 00911-BHS, ECF No. 114 (W.D. Wash. Nov. 5, 2012) ($40.00 cash or $80.00 certificate); *Garret, et al. v. Sharps Compliance, Inc.*, No. 1:10-CV-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51).

The Parties have also agreed that Mr. Wright may request an incentive award of up to $5,000. Mr. Wright may seek an incentive award for bringing and litigating this case on behalf of the class as such an award promotes a public policy of encouraging individuals to undertake the responsibility of representative lawsuits, as well as reflects the time, cost, and effort a class representative often must personally undertake in order to bring relief to the class. Incentive awards are often approved in class settlements. *See Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 2008 WL 1901988, at *7 (W.D. Wash. Apr. 24, 2008); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2003); *see also* Manual for Complex Litig. (Fourth) § 21.62 n.336 (2004) (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery") (citation omitted).

Defendant do not oppose the incentive award to Plaintiff as provided in the Settlement Agreement.

Moreover, the attorney fees to be requested are consistent with the 25% standard benchmark for Ninth Circuit class settlements.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002); *see also Bellows v. NCO Financial Systems, Inc.*, 2009 U.S. Dist. LEXIS 273, at *4-*5 (S.D. Cal. Jan 5, 2009) (awarding fees and costs equal to 31.6% of TCPA settlement); *Satterfield v. Simon & Schuster, Inc.* et al., No. 06-2893 (N.D. Cal. Aug. 6, 2010) (collected in Ex. F to Selbin Decl.) (fees and costs of 25% of TCPA fund).

For the sake of clarity, the amount of the incentive award and fee request is what Counsel intends to seek through the settlement agreement, but is being presented at this juncture

only to fully apprise the Court of the full terms of the settlement.  Thus, the Court does not need to make a determination as to the reasonableness of the proposed requests at this time.  Instead, in accordance with the Ninth Circuit's ruling in *In Re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2009), Plaintiff' counsel will move the Court, 30 days after Class Notice is sent, for approval of their fee request and Plaintiff's incentive award. In so doing, Plaintiff's counsel will present fulsome arguments in support of their fee petition and request for incentive awards.  In line with Ninth Circuit precedent when demonstrating the reasonableness of the requested fees, Plaintiff will present both a percentage of the benefit analysis and a lodestar cross-check.

Finally, the experienced views of all counsel involved support preliminary approval.  As reflected in the Declaration filed by Donald W. Heyrich, counsel for Plaintiff has substantial experience prosecuting class actions—and in particular as lead counsel in multiple TCPA cases. *See Heyrich Decl.* ¶¶ 8-14.  Plaintiff believes he would ultimately prevail, but litigating the case would be time-consuming, expensive, and, like most all class actions, risky.  As the docket already reflects, the case is complex, and given the issues involved the case could be litigated for years.  Based on their experience, Plaintiff's counsel evaluated these various issues, including the strengths and weaknesses of the case and the consequences of not settling, and concluded that the Settlement is in the best interest of Class Members.

>        3.        The Class Notice is Adequate

Rule 23(e)(1)(B) of the Federal Rules of Civil Procedure provides that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Further, the court should direct "the best notice practicable under the circumstances, including direct notice to all class members who can be identified through reasonable effort."  *See* Fed. R. Civ. P. 23(c)(2).  A notice of settlement is "satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchhill*

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT (Case No. 2:14-cv-00421-BJR) - 16

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

*Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

The proposed Class Notice to the Class Members fully satisfies these requirements. A detailed notice and claim form will be emailed where an email address is available or (if an email address is not available but a mailing address is available) mailed by first class mail to all Class Members at the address included in Lyft's records or obtained by the Settlement Administrator. The Supreme Court has held on several occasions that when addresses may be identified the best notice "practicable under the circumstances" is mailed notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732 (1974). Moreover, for those class members whose addresses were not identified, notice will be posted in the *Seattle Times* and *Spokesman Review*. And notice will be posted on the Internet for all class members.

The content of the Notice complies with Rule 23. The Notice informs Class Members of: (1) the basis of the claims; (2) who is included in the class; (3) who is eligible for payment and the potential for settlement recovery; (4) how Class Members may exclude themselves from the settlement; (5) their right to object to the Settlement; and (6) the contact information for the Claims Administrator. The Notice adequately describes the terms of the settlement in sufficient detail to alert any person with an adverse view point so that they may object and be heard.

**B. Provisional Certification of the Settlement Class Is Appropriate.**

For settlement purposes only, Plaintiff requests that the Court provisionally certify the proposed Class for settlement purposes only because all of the applicable certification requirements are satisfied.

### 1.    The Rule 23(a) Factors Are Satisfied.

#### a.    Numerosity.

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)

---

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT (Case No. 2:14-cv-00421-BJR) - 17

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

(quoting Fed. R. Civ. P. 23(a)(1)).  Here, the settlement Class consists of at least 330,000 persons.  The large number of persons in the settlement Class renders joinder impracticable. *See McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 674 (W.D. Wash. 2010).

### 2.      Commonality.

The commonality requirement of Rule 23(a)(2) is satisfied because there are questions of law and fact common to the settlement Class regarding whether Defendant' alleged practice of sending text messages without consent violates the TCPA and CPA.  *See Gragg v. Orange Cab, Co.*, 2014 WL 794266, at *2 (W.D. Wash. Feb. 27, 2014) (finding "there are common questions of both law and fact in this matter").

### 3.      Typicality.

The typicality element requires that the claims or defenses of the proposed class representative be typical of the claims or defenses of the class he seeks to represent. Typicality has been interpreted to mean that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).  These requirements are met here.  *Gragg*, 2014 WL 794266, at *2.

### 4.      Adequacy.

In determining whether the named plaintiff will fairly and adequately protect the interests of the class, the district court "must consider two questions: (1) do the named Plaintiff and their counsel have any conflicts of interest with other class members and (2) will the named Plaintiff and their counsel prosecute the action vigorously on behalf of the class?"  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (internal quotation marks omitted).  Plaintiff and his counsel will adequately represent the interest of the class here. *Gragg*, 2014 WL 974266, at *3.

1

### 5.    The Rule 23(b)(3) Criteria Are Met.

Rule 23(b)(3)'s predominance requirement tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance inquiry measures the relative weight of the common questions. *Amchem*, 521 U.S. at 624. Common issues predominate here because (in light of the Defendant's waiver of its defenses in this case for settlement purposes only) the central liability question in this case — whether Defendant sent unsolicited commercial electronic text messages to Washington residents — can be established through generalized evidence. *See Gragg*, 2014 WL 974266, at *4.

Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Additionally, resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See id.* at 617 (noting the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights"). Certification for purposes of settlement is appropriate.

### C. Scheduling a Final Approval Hearing Is Appropriate.

The last step in the settlement approval process is a final approval hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation. Proponents of the settlement may explain the terms and conditions of the Settlement Agreement, and offer argument in support of final approval. The Court will determine after the final approval hearing whether the settlement should be approved, and whether to enter a final order and judgment under Rule 23(e). To allow sufficient time to accomplish Class Notice, allow the Objection/Opt-Out deadline to close, and to respond to objections (if any), Plaintiff

1   requests that the Court set a date for a hearing on final approval at the Court's convenience, but

2   no earlier than 150 days after entry of an order preliminarily approving the settlement.

3                          **IV.    CONCLUSION**

4            For the all of the foregoing reasons, Plaintiff respectfully requests that the Court enter an

5   order (a) preliminarily approving the Class Action Settlement, (b) approving the notice which

6   shall issue to Class Members, (c) preliminarily certifying a settlement Class; and (d) schedule a

7   final approval hearing.

8      RESPECTFULLY SUBMITTED:  November 6, 2018

9        */s/ Donald W. Heyrich*, WSBA #23091
         **HKM ATTORNEYS**                              **STUTHEIT KALIN LLC**
10       600 Steward Street, Suite 901                  Peter Stutheit, WSBA #32090
         Seattle, WA  98101                             1 SW Columbia Street, Suite 1850
11       Tel: (206) 838-2504                            Portland, OR 97258Tel: (503) 493-7488
         Fax: (206) 838-2505                            Fax: (503) 715-5670
12       Email: dheyrich@hkm.com                        Email: peter@stutheitkalin.com

13                          Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1

## DECLARATION OF SERVICE

2

I certify that on this date I filed the foregoing document via the ECF system which will

3

serve a copy on the counsel listed below:

4

5

Archis A. Parasharami
MAYER BROWN LLP

6

1999 K Street N.W.
Washington, D.C. 20016

7

Tel: (202) 263-3000
Fax: (202) 263-3400

8

Email: aparasharami@mayerbrown.com

9

BYRNES KELLER CROMWELL LLP

10

Bradley S. Keller, WSBA #10665
Keith D. Petrak, WSBA #19159

11

1000 Second Avenue, 38th Floor
Seattle, WA 98104

12

Telephone: (206) 622-2000
Facsimile: (206) 622-2522

13

Email: bkeller@byrneskeller.com
        cmam@byrneskeller.com

14

15

Dated:  November 6, 2018.

16

*/s/ Donald W. Heyrich*

17

Donald W. Heyrich, WSBA #23091

18

19

20

21

22

23

24

25

26

27

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT (Case No. 2:14-cv-00421-BJR) - 21

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504