THE HONORABLE BARBARA J. ROTHSTEIN

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| KENNETH WRIGHT, on his own behalf and on behalf of other similarly situated persons, <br><br>　　Plaintiff, <br><br>　v. <br><br>LYFT, INC., a Delaware corporation, <br><br>　　Defendant. | Case No. 2:14-cv-00421-BJR <br><br>PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD AND ATTORNEYS' FEES AND COSTS <br><br>**NOTE ON MOTION CALENDAR**: <br><br>DATE: <br>　May 29, 2019 <br>　10:00 a.m. <br><br>LOCATION: <br>　United Stated Courthouse <br>　Courtroom 116128 <br>　700 Stewart Street <br>　Seattle, WA 98101 |

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS
(Case No. 2:14-cv-00421-BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

# Table of Contents

I. INTRODUCTION ..................................................................................................................1

II. THE SERVICE AWARD SHOULD BE APPROVED ......................................................1

III. THE REQUEST FOR ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED ..................................................................................................................................2

    A. Years of Effort Were Spent to Achieve the Excellent Result Which Now Benefits the Class .................................................................................................................3

    B. The Settlement Provides Substantial Relief for the Class........................................5

    C. Application of the Percentage-of-the-Fund Method is Warranted............................7

    D. Percentage-of-the-Fund Analysis Supports Counsel's Fee Request ........................9

        1. The Fees Requested, 25% of the Settlement Fund, Are Less Than the Amount of Fees Awarded in Similar Class Actions.........................................................9

        2. A Loadstar Cross-Check Confirms the Reasonableness of the Attorneys' Fees Requested ........................................................................................................12

        3. Class Counsel Faced Substantial Risk of Non-Payment .................................14

    E. The Payment of Costs is Fair and Reasonable .......................................................16

IV. CONCLUSION..................................................................................................................16

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS
(Case No. 2:14−cv−00421−BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

ii

# I. INTRODUCTION

Plaintiff Kenneth Wright, individually and on behalf of the Settlement Class preliminarily approved by the Court (hereinafter "Plaintiffs"), hereby moves the Court for an order granting this Motion for Approval of Service Award and Attorneys' Fees and Costs.

On November 15, 2018, the Court granted Plaintiff's motion for preliminary approval of a class action settlement reached between Plaintiffs and defendant Lyft, Inc. Dkt. #92. The class settlement provides a common fund with a total value of $3,995,000. The Court's November 15, 2018, Order also provided that Plaintiffs would submit this motion for approval of the service award and for attorneys' fees and costs 30 days after the date notice is first sent to the class. Dkt #92 ¶21. Plaintiffs now respectfully request that the Court approve a service award of $5,000 to the named plaintiff, plaintiffs' attorneys' fees in the amount of $998,750, and reimbursement of plaintiffs' out-of-pocket litigation costs in the amount of $20,764.06.

# II. THE SERVICE AWARD SHOULD BE APPROVED

Service awards are payments of money to class representatives that "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general. Awards are generally sought after a settlement or verdict has been achieved. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646-47 (S.D. Cal. 2011) ("Incentive awards are fairly typical in class actions."). Service awards became "routine" around the turn of the century. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1311 (2006) (a survey of settled class actions between 1993 and 2002). Today, "[i]ncentive awards are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958.

Historically, service awards approved by the Ninth Circuit and by this Court typically range between $5,000 and $40,000. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457,

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 1
(Case No. 2:14-cv-00421-BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

463 (9th Cir. 2000) (approving incentive awards of $5,000); *Pelletz v. Weyerhaeuser Co.*, 592 F.Supp.2d 1322, 1329-30 (W.D. Wash. 2009) (approving awards of $7,500); *Hughes v. Microsoft Corp.*, C98-1646C, 93-0178C, 2001 WL 34089697, *12-13 (W.D. Wash. Mar. 26, 2001) (approving incentive awards of $7,500, $25,000, and $40,000).

Courts also consider that approving service awards can encourage future class representatives to step forward to represent the interests of other classes. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."). Thus, an appropriate award will encourage others to step forward to help provide justice to classes of people who cannot obtain justice individually.

Here, Kenneth Wright stepped forward to advance the interests of the class. His representation of the class proved essential to obtaining the relief provided for the class in the settlement. His efforts and the risks he assumed should be rewarded. Plaintiffs respectfully request that the Court approve a service award of $5,000, which is reasonable in light of the prevailing standards in the Ninth Circuit. *See, e.g., Wheeler v. Cobalt Mortgage, Inc.,* C14-1847-JCC (W.D. Wash. Oct. 16, 2015) (order approving service award of $10,000 to the named plaintiff); *Glass v. UBS Fin. Servs., Inc*., C-06-4068 MMC, 2007 WL 221862, at *17 (N.D. Cal. Jan. 26, 2007), aff'd, 331 Fed. Appx. 452 (9th Cir. 2009) (order approving service award for $25,000 to the named plaintiff); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006) (finding the "mean within case average award" to be approximately $12,000).

### III. THE REQUEST FOR ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED

The class settlement preliminarily approved by the Court provides a common fund with a total value of $3,995,000. *See* Dkt. #92. Of this sum, Plaintiffs request that the Court approve attorneys' fees in the amount of $998,750, which is 25% of the settlement fund. Plaintiffs

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 2
(Case No. 2:14-cv-00421-BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

respectfully request approval of these attorneys' fees to compensate Class Counsel for the time and resources that they have expended over the five years that this case has been pending. In addition to attorneys' fees in the amount of $998,750, Plaintiffs respectfully request that the Court approve the reimbursement of their actual out-of-pocket expenditures for case expenses in the amount of $20,764.06.

A.   **Years of Effort Were Spent to Achieve the Excellent Result Which Now Benefits the Class**

Kenneth Wright filed this class action on March 24, 2014. See Dkt. #1. On June 6, 2014, Plaintiff filed Plaintiff's First Amended Complaint for Injunctive Relief and Damages (the "First Amended Complaint"). Dkt. #14. On April 4, 2016, Plaintiff filed Plaintiff's Second Amended Complaint for Injunctive Relief and Damages (the "SAC"). Dkt. #68. The SAC alleged that Lyft violated the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), the Washington Commercial Electronic Mail Act, RCW 19.190.010 et seq. ("CEMA"), and the Washington Consumer Protection Act, RCW 19.86.010 et seq. ("CPA"), by sending unsolicited commercial text messages to Plaintiff and members of the putative class on telephone numbers assigned to wireless subscribers.

From the beginning of the litigation, Defendant has contested almost every aspect of Plaintiff's claims. Defendant challenged whether Plaintiff could establish the use of an automatic telephone dialing system ("ATDS") under the TCPA; whether Defendant was the sender of the text messages under the TCPA and Washington statutes; whether the text messages in question qualified as commercial electronic text messages under Washington law; whether CEMA conferred a private cause of action for Plaintiff to pursue damages; and whether damages were available under the CPA for the acts alleged in the SAC. See e.g., Dkt. #8 (Defendant's Motion to Dismiss or for Stay), 18 (Defendant's Renewed Motion to Dismiss or for Stay), and 54 (Defendant's Renewed Motion to Dismiss).

On January 5, 2016, the Court stayed the case pending rulings by the Federal Communications Commission on petitions addressing relevant issues under the TCPA. *See*

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 3
(Case No. 2:14-cv-00421-BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

Dkt. #40 (Order Granting Defendant's Motion to Stay). Then, after the FCC issued its ruling, on October 27, 2015, the Court lifted the stay (Dkt. No. 52) and, on April 15, 2016, the Court entered its Order on Motion to Dismiss. Dkt. #63. The Court dismissed Plaintiff's claim under the TCPA and denied Defendant's motion on Plaintiff's claims under CEMA and the CPA. *Id.*

On February 17, 2017, the Court certified two questions to the Washington Supreme Court:

> 1. Does the recipient of a text message that violates the Consumer Electronic Mail Act, Ch. 19.190 RCW ("CEMA"), have a private right of action for damages (as opposed to injunctive relief) directly under that statute?
>
> 2. Does the liquidated damages provision of CEMA, RCW 19.190.040(1), establish the causation and/or injury elements of a claim under the Washington Consumer Protection Act, Ch. 19.86 RCW ("CPA"), as a matter of law or must the recipient of a text message that violates CEMA first prove injury in fact before he or she can recover the liquidated damage amount?

Dkt. #73.

The parties then litigated these questions before the Washington Supreme Court. On December 14, 2017, the Washington Supreme Court answered the certified questions and held that (1) the recipient of a text message sent in violation of CEMA does not have a private right of action for damages directly under CEMA; but (2) the liquidated damages provision of CEMA, RCW 19.190.040(1), establishes the causation and injury elements of a claim under the CPA as a matter of law. *See* Dkt. #76.

Settlement negotiations in this matter were as hard fought as the litigation. With risks on significant legal issues, the parties first agreed to mediate this matter on September 17, 2014. The parties engaged the Honorable Terrence Lukens (Ret.), an experienced mediator and former Judge of the King County Superior Court, who has developed a respected reputation as a mediator of TCPA and CEMA cases. The case did not resolve at that first mediation, but the parties continued to negotiate. See Dkt. #25 (Joint Report Regarding Mediation Status), 30 (Joint Report Regarding Mediation Status).

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD AND ATTORNEYS' FEES AND COSTS - 4
(Case No. 2:14-cv-00421-BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

One year later, on October 6, 2015, after further legal developments in the case, the parties convened a second mediation with Judge Lukens. The parties were unable to resolve the case in that second mediation. See Dkt. #51 (Joint Status Report).

After the Washington Supreme Court issued its ruling on the certified questions, and due to the significance of the case and the difficulty in finding a resolution, the parties agreed to the expense and time necessary to conduct a full-day mediation in Southern California. On October 30, 2017, the parties attended a full-day mediation in Corona del Mar, California, with Gary A. Feess, a retired United States District Court Judge for the Central District of California. The parties were unable to resolve the case at the mediation with Judge Feess but continued negotiations by telephone with Judge Feess and later directly between counsel. The parties continued settlement discussions for several months and eventually reached the settlement that has been preliminarily approved by the Court.

**B.    The Settlement Provides Substantial Relief for the Class**

Under the terms of the Settlement Agreement, Lyft has agreed to establish a non-reversionary settlement fund in the amount of $3,995,000. Under the proposed settlement, the fund will be used to pay the expenses related to settlement administration, an incentive award to named plaintiff Kenneth Wright, payment of plaintiff's attorneys' fees, and reimbursement of litigation expenses. All remaining funds will then be distributed to members of the class who make a claim for a share of the settlement fund. No amount of the settlement fund will be returned to Defendant.

Under the terms of the agreement, distribution of the settlement fund will be carried out according to a formula and certain factual circumstances that differentiate class members. The proposed distribution formula takes into account the fact that Lyft changed the way in which the "invite-a-friend" program worked on February 9, 2015. Although Lyft contends that it has a range of defenses to all text messages that were sent, it alleges that it has especially strong defenses for any claim based on a text message sent after that date. The proposed distribution

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 5
(Case No. 2:14-cv-00421-BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

also takes into account the fact that some members of the proposed class became Lyft users. These class members agreed to Lyft's written Terms of Service when they signed up for service. Lyft contends that the written Terms of Service provide strong defenses for claims by any proposed class member who agreed to those terms. Thus, in light of the different strengths and weaknesses of the legal claims that apply to each of the four groups, the settlement provides for more or less "shares" of the settlement fund for class members who fall into the four groups, as follows

| | | |
|---|---|---|
| **Group A** | Received a message before February 9, 2015 and did not accept Lyft's Terms of Service | A class member in this group making a claim will receive **10** shares. |
| **Group B** | Received a message before February 9, 2015 and accepted Lyft's Terms of Service | A class member in this group making a claim will receive **5** shares. |
| **Group C** | Received a message on or after February 9, 2015 and did not accept Lyft's Terms of Service | A class member in this group making a claim will receive **2** shares. |
| **Group D** | Received a message on or after February 9, 2015 and accepted Lyft's Terms of Service | A class member in this group making a claim will receive **1** share. |

The amount of each share will turn on how many class members submit a claim for payment. However, assuming that 25% of class members in each group submit claims, Plaintiff's counsel estimate that the payments to the class would range from $13 (for Group D) to $132 (for Group A). These payments will of course be higher if less than 25% of the class members submit claims, and plaintiffs will be in position to update this claim information before the date for the final approval hearing (May 29, 2019). Nevertheless, it can be said with

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 6
(Case No. 2:14-cv-00421-BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

certainty at this point that the amount each claiming Class Member will receive is equal to or above the average settlement in cases like this, both in Washington and nationwide. *See, e.g.*, *Manouchehri v. Styles for Less, Inc.*, Case No. 14-cv-2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (approving TCPA settlement of $10.00 cash or $15.00 voucher for class members); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) ($40.00 cash for class members); *Kolinek v. Walgreen Co.*, No. 13-4806 (N.D. Ill. 2015) (providing approximately $30 to each claiming class member); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (providing $34.60 per claiming class member); *Wojcik v. Buffalo Bills, Inc.*, No. 12-2414, Dkt. 73 (M.D. Fla. Apr. 17, 2014) (providing for $57, $65, or $75 gift cards redeemable only at defendant's stores); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-2261, Dkt. 97 (S.D. Cal. 2013) (providing for a $20 voucher to each claiming class member, which could be redeemed for $15 cash after nine months); *Kazemi v. Payless Shoesource, Inc.*, No. 09-05142, Dkt. 94 (N.D. Cal. 2012) (providing for a $25 voucher to each claiming class member); *Garret, et al. v. Sharps Compliance, Inc.*, Case No. 1:10-cv- 04030, ECF No. 65 (N.D. Ill. Feb. 23, 2012) (providing class members between $27.42 and $28.51 cash); *Cubbage v. Talbots, Inc.*, No. 09-cv- 00911-BHS, ECF No. 114 (W.D. Wash. Nov. 5, 2012) ($40.00 cash or $80.00 certificate); *Garret, et al. v. Sharps Compliance, Inc*., No. 1:10-CV-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51).

## C. Application of the Percentage-of-the-Fund Method is Warranted

Federal courts long have recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund for their successful efforts in creating it. *See, e.g., Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) (the Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund ... is entitled to a reasonable attorney's fee from the fund as a whole"); *Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 7
(Case No. 2:14-cv-00421-BJR)

**HKM Attorneys**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

(1885); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003; *In re Washington Public Power Supply System Sec. Litig.,* 19 F.3d 1291,1300 (9th Cir. 1994) ("those who benefit in the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it"); *Vincent v. Hughes Air West. Inc.,* 557 F.2d 759, 769 (9th Cir. 1977) ("[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees.").

The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients. *See Boeing,* 444 U.S. at 478. Where the attorneys and unnamed class member clients have no express retainer agreement, those who benefit from the fund without contributing to it would be unjustly enriched if attorneys' fees were not paid out of the common fund. *See id.*; *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). When clients do not pay an ongoing hourly fee to their counsel, they typically negotiate an agreement in which counsel's fee is based upon a percentage of any recovery. The percentage-of-the-fund approach mirrors this aspect of the market and thereby reflects the fee that would have been negotiated by the class members in advance, had such negotiations been feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation. *See, e.g., Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 271 (9th Cir. 1989) ("[I]t is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit."); *Sutton v. Bernard,* 504 F.3d 688, 692 (7th Cir. 2007) ("In deciding fee levels in common fund cases, we have consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'"); *cf. Missouri v. Jenkins by Agyei,* 491 U.S. 274, 285 (1989) (market factors should be considered in evaluating reasonableness).

For these reasons, the percentage-of-the-fund method is overwhelmingly preferred by

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 8
(Case No. 2:14-cv-00421-BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

courts. Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 Journal of Empirical Legal Studies, 248-281 (June 2010) (attached at *Decl. Kirby*, Ex. 2). An empirical study based on eighteen years of published opinions on settlements in 689 common fund class action and shareholder derivative settlements in both state and federal courts found that: (1) 83 percent of cases employed the percentage-of-the-recovery method, and (2) the number of courts employing the lodestar method has declined over time, from 13.6 percent from 1993-2002 to 9.6 percent from 2003 to 2008. *Id.*, at 267-69; *accord* Fitzpatrick, Brian T., An Empirical Study of Class Action Settlements and Their Fee Awards, 7 Journal of Empirical Legal Studies, 24 (July 2010) (finding, in a similar empirical study of 688 settlements approved by federal district courts during 2006 and 2007, that 69 percent of courts employed the percentage-of-the-settlement method, 12 percent employed the lodestar method, and 20 percent did not report which method they used).

Here, the Settlement preliminarily approved by the Court establishes a Settlement Fund. Because Class members have not paid Class Counsel for their efforts, equity requires that a fair and reasonable fee be paid, based on what the market would traditionally require, no less than if they had hired private counsel to litigate their cases individually. *Boeing,* 444 U.S. at 479-81.

**D.    Percentage-of-the-Fund Analysis Supports Counsel's Fee Request**

**1.    The Fees Requested, 25% of the Settlement Fund, Are Less Than the Amount of Fees Awarded in Similar Class Actions**

An often-cited empirical study of attorneys' fees in common fund cases found that awards averaged 32% of the fund and 34.74% when expenses are added in. *See* Silber and Goodrich, *Common Funds and Common Problems Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 545 (1998) (cited in *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1123-25 (C.D. Cal. 2008)).  Silber and Goodrich recommend a 33% fee award and say that this is appropriate because "the attorneys will receive the best fee when the attorneys obtain the best recovery for the class.  Hence, under the percentage approach, the class members and the class counsel have the same interest – maximizing the recovery of the

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 9
(Case No. 2:14-cv-00421-BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

class." *Id*. at 534.

In the 9th Circuit, the typical range of acceptable attorneys' fees in class action cases is 20% to 33 1/3% of the total settlement value, with 25% being considered the "benchmark." *See Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993); *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston* & *Hunt* v. *Graulty,* 886 F.2d 268,272 (9th Cir. 1989). Courts frequently award fees greater than the benchmark. *See, e.g., Vizcaino,* 290 F.3d at 1049-50; *In re Mega Fin. Corp. Sec. Litig.,* 213 F 3d 454,460 (9th Cir. 2000); *Bond* v. *Ferguson Enterprises, Inc.,* 1:09-cv-1662 OWW MJS, 2011 WL 2648879, *9-11 (E.D. Cal. June 30, 2011) ("[T]he exact percentage varies depending on the facts of the case, and in 'most common fund cases, the award exceeds that benchmark.'") (citation omitted); *see also In re Activision Sec. Litig.,* 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%").

Courts in the Ninth Circuit frequently award a percentage of the fund that is higher than the 25% benchmark. *See In re Omnivision Techs, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). In fact, the fee award exceeds the 25% benchmark in *most* common fund cases. *See Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, at *12 (E.D. Cal. Sept. 1, 2011) (fees in common fund cases average 32% or 34.64%); *Omnivision* at 1047 ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30%"); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33% of fund); *Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270 ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery" (citing 4 Newberg, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)); *In re Mego*, 213 F.3d 457, 463 (9th Cir. 2000) (affirming award of 33% of common fund); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33% of fund in TCPA class action)); *Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 U.S. Dist.

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 10
(Case No. 2:14-cv-00421-BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

LEXIS 25595, at *18 (D. Mont. Feb. 11, 2015) (common fund fee assessment for Class Counsel is approved in the amount of 33% or $15 million, from the common fund of $45 million obtained for the Class).

Similarly, courts in other circuits routinely award one-third of the common fund in TCPA class actions. *See, e.g., Prater v. Medicredit, Inc.*, 2015 WL 8331602, at *3 (E.D. Mo. Dec. 7, 2015) (awarding one-third of $6.75MM settlement fund in class counsel fees); *Lees v. Anthem Ins. Companies Inc.*, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (approving 34% of $4.75MM settlement fund in class counsel fees); *Guarisma v. ADCAHB Med. Coverages, Inc*., Dkt. No. 95, 13–cv–21016 (S.D. Fla. June 24, 2015) (granting an award for fees of one-third of the $4.5MM settlement fund when the litigation proceeded for more than two years and required rigorous discovery and motion practice).  In fact, the court in *In re Capital One Tel. Consumer Prot. Act Litig*, 2015 U.S. Dist. LEXIS 17120, *62 (N.D. Ill. Feb. 12, 2015), analyzed dozens of TCPA class settlements throughout the country and determined that a risk adjusted fee structure would provide a fee of 36% for the first $10 million.

Here, Plaintiffs are requesting attorneys' fees equal to the 25% "benchmark" applied in the 9th Circuit and are not requesting any upward adjustment from this amount. Class counsel respectfully submits that their fee request is supported by the quality and amount of work class counsel did on behalf of the Class, and the outstanding settlement that will result in a sizable cash payment for each class member who submits a claim.  The request also is well within the range of attorneys' fees awarded in TCPA cases and other class actions.  *See,e.g.*, *Ikuseghan v. Multicar Health Sys*., No. C14-5539 BHS, 2016 WL 4363198, at *2 (W.D. Wash. Aug. 16, 2016) (awarding 30% of the settlement fund*); Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 U.S. Dist. LEXIS 25595, at *18 (D. Mont. Feb. 11, 2015 (common fund fee assessment for Class Counsel is approved in the amount of 33% or $15 million, from the common fund of $45 million obtained for the Class); *In re Mego Fin. Corp. Secs. Litig*., 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming fee award of 33.33% of common fund); *In re*

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 11
(Case No. 2:14-cv-00421-BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

*Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475-DT(RCx), 2005 WL 1594403, at *18–19 (C.D. Cal. June 10, 2005) (awarding 33.33% of fund); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, No. 87-0979G (CM), 1991 WL 427893, at *4 (S.D. Cal. May 6, 1991) (awarding 33.33% of fund); *Saf-T-Gard v Vanguard Energy Services, LLC.*, 12 C 3671 (N.D. Ill 2014) (awarding 33% of the common fund); *Hanley v Fifth Third Bank*, 12 C 1612 (N.D. Ill) (Judge Castillo) (awarding 33% of the common fund); *Saf-T-Gard v Seiko*, 09 C 776 (N.D. Ill. 2011) (Judge Bucklo) (awarding 33% of the common fund); *Hinman v. M and M Rental Center Inc.*, 06-cv- 01156, Dkt. No. 225 (N.D. Ill. 2008) (awarding 33% of the common fund plus costs); *CE Design, Ltd. v. Cy's Crabhouse*, 07 C 5456, Dkt. No. 373 (N.D. Ill. Sept. 22, 2010) (Judge Kennelly) (awarding 33% of the common fund plus costs); *Holtzman v. CCH*, 07 C 7033, Dkt. No. 33 (N.D. Ill. Sept. 30, 2009) (Judge Nordberg) (awarding 33% of the common fund plus costs); *CE Design, Ltd. v. Exterior Systems, Inc.*, 07 C 66, Dkt. No. 32-2 (N.D. Ill. Dec. 6, 2007) (Judge Darrah) (awarding 33% of the common fund plus costs); *Locklear Electric, Inc. v. Norma L. Lay*, 09 C 0531, Dkt. No. 67 (S.D. Ill. Sept. 8, 2010) (Reagan, J.) (awarding 33% of the common fund plus costs); *Accounting Outsourcing, LLC. V. Verizon Wireless*, 2007 U.S. Dist. LEXIS 97153 (M.D. La. 2007) (awarding $2,314, 328, which is in excess of 35% of the common fund, plus costs); *Nicholson v Hooters of Augusta, Inc.*, 95-RCCV-616, (Richmond County, Ga. April 25, 2001) (awarding 3,931,035.62, which was 33% of the common fund plus costs).

  2.  **A Loadstar Cross-Check Confirms the Reasonableness of the Attorneys' Fees Requested**

A basic lodestar cross-check multiplies the number of hours counsel reasonably expended on the litigation by a reasonable hourly rate. *See Hanlon,* 150 F.3d at 1029. When calculating a lodestar award as a "cross-check" for an award of a percentage-of recovery, courts generally look to prevailing market rates for comparable work in the district in which the court sits to determine a reasonable hourly rate. *See, e.g., Camacho v. Bridgeport Fin. Servs.*, 523 F.3d 973, 979 (9th Cir. 2008).

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD AND ATTORNEYS' FEES AND COSTS - 12
(Case No. 2:14-cv-00421-BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

Class Counsel and their affiliated attorneys expended over 817 hours of attorney time on this case. *See Declaration of Donald W. Heyrich in Support of Plaintiff's Motion for Approval of Service Award and Attorneys' Fees and Costs* ¶ 3. These hours are reasonable if for no other reason than that class counsel knew that it was possible they would never be paid for this substantial amount of work. Counsel had no incentive to act in a manner that was anything but economical. *See Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008) ("[L]awyers are not likely to spend unnecessary time on contingency cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee."). That said, counsel took their responsibility seriously and endeavored to represent the interests of the class members to the greatest extent possible. As reflected by filings in this Court and in the Washington Supreme Court, this advocacy required a substantial amount of work.

The attorney hourly rates applied for the loadstar cross-check range from $295 to $685 per hour. *See Heyrich Decl.* ¶ 3. These rates are consistent with rates applied to class counel's legal time in other cases, and consistent with rates applied in class action cases in the Western District of Washington. *See Heyrich Decl.* ¶¶ 5-11 (setting forth class counsel's approved rates in other cases; *see also Joseph v. TrueBlue, Inc.*, Case No. 3:14-cv-05963-BHS (applying a rate of $725 per hour to an attorney with experience to that of class counsel in this case, and applying rates overall ranging from $425 to $725); *Pelletz v. Weyerhaeuser Co.,* 592 F. Supp. 2d 1322, 1326 (W.D. Wash. 2009) (approving hourly rates for work performed in Seattle that ranged from $415 to $760 per hour as part of 2,407.4 total hours spent over the course of litigation spanning about 1 1/2 years); *Palmer v. Spring Solutions, Inc.*, C9-1211 JLR, Dkt. No. 90 (W.D. Wash. Oct. 21, 2011) (granting motion for attorney fees as percentage of common fund where rates of Seattle attorneys ranged from $650 to $760 per hour for a case litigated about two years), *affirmed by* 508 F.App'x 658 (9th Cir. 2013); *Global Educ. Servs. v. Intuit, Inc.*, No. C09-944 RSL (W.D. Wash. 2011) (approving hourly rates of $760 and $650 following

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 13
(Case No. 2:14-cv-00421-BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

a reasonableness review); *Gardner v. Capital Options, LLC et al*., No. C07-1918 (W.D. Wash. 2009) (approving hourly rates of $760 and $500 following a reasonableness review); *Zwicker v. Gen. Motors Corp*., No. C07-0291 JCC (W.D. Wash. 2008) (approving hourly rates up to $650); *Dell v. Carideo*, No. C06-1772 JLR (W.D. Wash. 2010) (approving plaintiffs' fee request at comparable rates to those sought here); *Khadera v. ABM Indus., Inc*., C08-0417 RSM (W.D. Wash. Oct. 2012) (same); Arthur v. Sallie Mae, Inc., C10-00198 JLR (Sept. 2012 W.D. Wash.) (same).

Multiplying the reasonable hours worked by class counsel by the reasonable hourly rates establishes that the base lodestar attorney fee award in this case would be $512,792.50. This combined loadstar would result in a multiplier of 1.9, which is well within the range of 0.6 to 19.6. multipliers approved by courts when awarding a percentage of the common fund as attorneys' fees. *See Baker v. Navient Solutions, LLC.,* Case No. 1:17-cv-1160 (LMB/JFA) (E.D. Va.) (Feb. 8, 2019) (TCPA case awarding fees equal to 33.33% of the common fund, which was 2 times the loadstar); *Joseph v. TrueBlue, Inc*., Case 3:14-cv-05963-BHS Dkt #131, and Dkt. #132 at ECF p. 8 (W.D. Wash. Mar. 6, 2017) (TCPA case awarding fees equal to 30% of the settlement fund, which was 2.29 times the loadstar); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, at 1051 n.6 (9th Cir. 2002); *Steiner v. Am. Broad Co*., 248 Fed. Appx. 780, 783 (9th Cir. 2007) (approving 6.85 multiplier); *In re Rite Aid Corp. Sec. Litig*., 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (multiplier of 6.96).

### 3. Class Counsel Faced Substantial Risk of Non-Payment

The Ninth Circuit recognizes that the public interest is served by rewarding attorneys who assume representation on a contingent basis to compensate them for the risk that they might be paid nothing at all for their work. *In re Wash. Pub. Power*, 19 F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if rendered on a noncontingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 14
(Case No. 2:14-cv-00421-BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

whether they win or lose."); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency cases "for taking the risk of nonpayment by paying them a premium over their normal hourly rates").

Though the settlement now before the Court is substantial, there has never been any assurance of a meaningful award which could compensate either the class for their damages or Class Counsel for their attorneys' fees and costs. Indeed, class certification is not automatic in cases such as this. *See, e.g., Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"); *Versteeg v. Bennett, Deloney & Noyes*, P.C., 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number") (internal citations omitted). It was also not guaranteed that Plaintiffs would prevail on the key issues under CEMA that were presented to the Washington Supreme Court.

In this case, Class Counsel is comprised of two small firms. Firms of small size face even greater risks in litigating large class actions with no guarantee of payment. *Boyd v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 162880 (C.D. Cal. Nov. 18, 2014) (awarding 33% rather than 25% benchmark, finding heightened risk of small firm representation should be rewarded with larger percentage fee for good result); *see also Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 483 U.S. 711, 750 (1987) (Delaware Valley II) (plurality opinion) ("[C]ontingent litigation may pose great risks to a small firm or a solo practitioner because of the risk of nonpayment may not be offset so easily by the presence of paying work. . ."); *Davis v. Mutual Life Ins. Co.*, 6 F.3d 367, 382 (6th Cir. 1993) ("[T]he maintenance of comparatively large pieces of litigation preens small firms from diversifying risk by taking on additional clients . . .").

Class Counsel prosecuted this matter on a purely contingent-fee basis, agreeing to

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 15
(Case No. 2:14-cv-00421-BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

advance all necessary expenses and to receive a fee only if there was a recovery. Class Counsel have invested considerable time and money prosecuting this action. Class Counsel's outlay of their time, opportunity costs, and money, under risk that none of it would be recovered, supports the fees requested here. *Omnivision*, 559 F. Supp. 2d 1036, 1047.

### E. The Payment of Costs is Fair and Reasonable

Counsel who help to create a common fund are entitled to the litigation expenses they incurred in prosecuting the case "so that the burden is spread proportionally among those who have benefited." *Staton*, 327 F.3d at 969-70 (quoting Van Gemert, 444 U.S. at 478); *see also In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement.").

Class Counsel seek reimbursement of their out-of-pocket litigation expenses, totaling in the amount of $20,764.06. Class Counsel incurred these out-of-pocket expenses without assurance that they would ever be repaid. These out-of-pocket expenses were necessary to secure the resolution of this litigation, and should be recouped. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-1178 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in class action litigation).

## IV. CONCLUSION

For the all of the foregoing reasons, Plaintiffs respectfully request that the Court approve a service award of $5,000 to the named plaintiff, plaintiffs' attorneys' fees in the amount of $998,750, and reimbursement of plaintiff's litigation costs in the amount of $20,764.06.

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 16
(Case No. 2:14-cv-00421-BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

1  RESPECTFULLY SUBMITTED:  February 13, 2019

2   */s/ Donald W. Heyrich*, WSBA #23091

| **HKM ATTORNEYS** | **STUTHEIT KALIN LLC** |
|---|---|
| 600 Steward Street, Suite 901 | Peter Stutheit, WSBA #32090 |
| Seattle, WA  98101 | 1 SW Columbia Street, Suite 1850 |
| Tel: (206) 838-2504 | Portland, OR 97258 Tel: (503) 493-7488 |
| Fax: (206) 838-2505 | Fax: (503) 715-5670 |
| Email: dheyrich@hkm.com | Email: peter@stutheitkalin.com |

Attorneys for Plaintiff

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 17
(Case No. 2:14-cv-00421-BJR)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

**DECLARATION OF SERVICE**

I certify that on this date I filed the foregoing document via the ECF system which will serve a copy on the counsel listed below:

Archis A. Parasharami
MAYER BROWN LLP
1999 K Street N.W.
Washington, D.C. 20016
Tel: (202) 263-3000
Fax: (202) 263-3300
Email: aparasharami@mayerbrown.com

BYRNES KELLER CROMWELL LLP
Bradley S. Keller, WSBA #10665
Keith D. Petrak, WSBA #19159
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Telephone: (206) 622-2000
Facsimile: (206) 622-2522
Email: bkeller@byrneskeller.com
          cmam@byrneskeller.com

Dated: February 13, 2019.

*/s/ Donald W. Heyrich*
Donald W. Heyrich, WSBA #23091

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 18
(Case No. 2:14-cv-00421-BJR)

**HKM A**TTORNEYS
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504